*13*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 0 6 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| THE NATIONAL HISPANIC CIRCUS, INC., A New York not-for-profit Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION No. B-02-135 |
| REX TRUCKING, INC., a Texas Corporation, and THE MASON AND DIXON LINES, INC., a Michigan Corporation | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
## AND JURY DEMAND

Plaintiff, The National Hispanic Circus, Inc., by its attorneys, Roger Albright and Stephen Chapman, for its Complaint against Rex Trucking, Inc. and The Mason and Dixon Lines, Inc., hereby alleges upon knowledge with respect to its own acts, and upon information and belief with respect to all other matters, as follows:

### INTRODUCTION

1.      On or about August 27, 2001 Rex Trucking, Inc. was hired by the Plaintiff to transport and deliver tractors and trailers, one of which contained a set of bleachers, from Harlingen, Texas to Chicago, Illinois.

2.      This action arises from Rex Trucking and /or Mason and Dixon's failure to deliver the Plaintiff's bleachers prior to the Plaintiff's scheduled performance in Chicago, Illinois on August 31, 2001, as a result of the trailers being stolen shortly after

Rex Trucking, Inc. and/or Mason and Dixon took exclusive possession of the trailer containing the bleachers.

3.      During August of 2001, Rex Trucking and/or its assets were purchased by the Mason and Dixon Lines, Inc., a Michigan Corporation.

4.      As will be detailed below, the Plaintiff seeks redress for significant financial losses and damages suffered as a result of the loss of the trailer and bleachers owned by the Plaintiff which had been entrusted by the Plaintiff into the exclusive care, custody and control of Rex Trucking, Inc. and/or the Mason and Dixon Lines, Inc.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6.      This Court has personal jurisdiction over the Defendants because the Defendants entered the contract and provided services to the Plaintiff in the State of Texas.

7       Venue is proper in this District under 28 U.S.C. §1391(c) because a substantial part of the events and transactions giving rise to the claim occurred in this District.

## THE PARTIES

8.      The National Hispanic Circus, Inc., d/b/a Circo Mundial (the "Circus"), is a New York State not-for-profit corporation with offices at 315 East Kingsbridge Road, Bronx, New York 10458.    The Circus is a traveling bilingual circus that performs

throughout the United States and was performing in Harlingen, Texas at the time the contract was entered.

9.      The Defendant Rex Trucking, Inc. ("Rex Trucking") is a Texas corporation that has been served on its registered agent, G. Stephen Parrott, C/O Hoover Slovaceck, LLP., 5847 San Felipe, Suite 2200, Houston, Texas 77057. Rex Trucking is a trucking company which transports and delivers cargo.

10.      The Mason and Dixon Lines, Inc. ("Mason and Dixon") is a Michigan Corporation that may be served upon its registered agent Willard Lindley, 12225 Stephens, Warren, Michigan 48089. Mason and Dixon is a trucking company which transports and delivers cargo.

## FACTUAL ALLEGATIONS

11.      On or about August 27, 2001 the Circus and Rex Trucking entered into an agreement pursuant to which Rex Trucking was to provide drivers and trucks to transport from Harlingen, Texas to Chicago, Illinois, seven (7) Circus trailers, one of which contained a set of bleachers.  During this same period Rex Trucking and/or its assets were purchased by the Mason and Dixon Lines, Inc.

12.      Under the terms of the agreement, Rex Trucking and/or Mason And Dixon was required to deliver the Circus' trailers and their respective loads to Chicago, Illinois prior to August 31, 2001, the commencement date of the Circus' scheduled tour in Chicago.  The Circus required the trailers, specifically the bleachers, to be delivered prior to that date so that the Circus could set up for its performance in Chicago.

13.     Based on this agreement, the Circus placed its trailers and their respective loads under Rex Trucking and/or Mason and Dixon's sole and exclusive custody, care, supervision, direction and control.

14.     During the term of this agreement, Rex Trucking and/or Mason and Dixon had exclusive control over its drivers and its trucks, in addition to the means, methods, and details of delivering the trailers to the Circus in Chicago.

15.     Shortly after Rex Trucking and/or Mason and Dixon took possession of the trailers, the truck transporting the Circus' trailer containing the bleachers was stolen while in the exclusive possession of and otherwise under the custody and control of Rex Trucking and/or Mason and Dixon.  The trailer and bleachers never arrived in Chicago.

16.     As a result of the theft of the trailer and the loss of the bleachers, the Circus was delayed in setting up the circus and was forced to rent bleachers to carry out its performances in Chicago.  The cost of renting replacement bleachers was $9,000.00.

17.     The rented bleachers, however, provided approximately 1/3rd fewer seats than the Circus' stolen bleachers.  The Circus' bleachers had been specifically purchased based on the design of the tent.  The Circus was unable to obtain larger or additional rented bleachers to compensate for the 1/3rd fewer seats because the rented bleachers did not conform to the size and shape of the tent.

18.     Based on the success of the show, the Circus extended its original tour dates in Chicago of August 29, 2001 through September 9, 2001, by one week, through September 16, 2001, for a total of twenty-six (26) performances.  However, as a result of the fewer bleacher seats, the Circus suffered consequential damages of $6,000.00 per performance over twenty-six (26) performances for a total of $156,000.00.

19.    At the conclusion of the Circus' performance in Chicago the bleachers had not been recovered and the Circus was preparing for the remainder of its 2001 National Tour. The Circus, therefore, was required to purchase new bleachers from Canobbio, the Circus' supplier for its tent and its bleachers, in Italy.

20.    On or about September 19, 2001 the Circus ordered new bleachers from Canobbio. The cost of the new bleachers was $92,740.00. The Circus also incurred shipping costs in the amount of $36,104.46 for shipping the bleachers from Italy to the United States. The Circus suffered damages in the amount of $128,844.46 for the purchase and shipment of the new bleachers.

21.    As a result of the loss of the bleachers, the Circus incurred damages totaling $293,844.46 for the cost of rented bleachers, the resulting loss of ticket sale revenues and the costs related to purchasing replacement bleachers.

22.    On February 19, 2002, the Circus through its attorneys, demanded payment of the $293,844.46 due and owing for the damages the Circus incurred as a result of Rex Trucking and/or Mason and Dixon's failure to transport and deliver the Circus' bleachers for its performances during its 2001 National Tour.

23.    Rex Trucking and/or Mason and Dixon have failed to make any payments despite demands by the Circus and its attorneys.

## FIRST CLAIM FOR RELIEF (COUNT I)
### BREACH OF AGREEMENT

24.    The Circus repeats and realleges each and every allegation contained in Paragraphs 1 through 24 with the same force and effect as if here set forth in full.

25.    Rex Trucking and/or Mason and Dixon have refused and continue to refuse to pay the Circus for the cost of renting replacement bleachers in the amount $9,000.00 in accordance with the agreement between Rex Trucking and the Circus although the Circus has demanded payment.

26.    Rex Trucking and/or Mason and Dixon have refused and continue to refuse to pay the Circus for the loss of ticket sale revenues in the amount $156,000.00 in accordance with the agreement between Rex Trucking and the Circus although the Circus has demanded payment.

27.    Rex Trucking and/or Mason and Dixon have refused and continue to refuse to pay the Circus for the purchase and shipment of the new bleachers in the amount of $128,844.46 in accordance with the agreement between Rex Trucking and the Circus although the Circus has demanded payment.

28.    As a result of Rex Trucking's and/or Mason and Dixon's failure and refusal to pay the Circus these sums, $293,844.46 is due and owing by Rex Trucking and/or Mason and Dixon for damages as a result of the cost of rented bleachers, the resulting loss of ticket sale revenues and the costs related to purchasing replacement bleachers, which constitutes a breach of the parties' agreement.

29.    Consequently, the Circus has been damaged in the amount of $293,844.46, with interest from February 19, 2002.

JURY DEMAND

30.    Plaintiff hereby demands to bring this action before a jury.

WHEREFORE, Plaintiff the Circus respectfully prays that the Court grant the follow relief:

A.      A prompt jury trial on the merits;

B.      Expedited discovery;

C.      Findings of fact and conclusions of law that Rex Trucking and/or Mason and Dixon are liable for the actual and consequential damages the Circus suffered in the amount of $293,844.46, with interest from February 19, 2002;

D.      Compensatory damages for the Circus's significant losses incurred as a result of Rex Trucking and/or Mason and Dixon's failure to transport and deliver the Circus' bleachers for its performances during its 2001 National Tour in the amount of $293,844.46, with interest from February 19, 2002; and

E.      Costs, attorney's fees, interest, disbursements of this action, and such other and further relief as this Court may deem proper.

Respectfully Submitted,

Roger Albright
(Bar No. 009 745 80)
Law Offices of Roger Albright
Attorney In Charge (S.D. No. 11191
3301 Elm Street
Dallas, Texas 75226-1637
(214) 939-9222
(214) 939-9229 Fax

Stephen J. Chapman
State Bar No. 24001870
BARKER, LEON, FANCHER
& MATTHYS, L.L.P.
Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served in accordance with the Texas Rules of Civil Procedure on this the 4TH day of _November_, 2002, to all counsel of record as follows:

G. Stephen Parrott
Patrick Sullivan
Hoover Slovaceck, LLP.
5847 San Felipe, Suite 2200
Houston, Texas 77057

Stephen J. Chapman