*40*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC. A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-02-135 |
| | § | |
| REX TRUCKING, INC., A TEXAS | § | |
| CORPORATION, AND THE MASON | § | JURY DEMANDED |
| AND DIXON LINES, INC. A MICHIGAN | § | |
| CORPORATION | § | |
| Defendants | § | |

## DEFENDANT, REX TRUCKING, INC.'S AND THE MASON AND DIXON LINES, INC.'S, JOINT MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendants, **REX TRUCKING, INC.** ("Rex") and **THE MASON AND DIXON LINES, INC.** ("Mason and Dixon Lines")(collectively referred to as "Defendants") and in accordance with the dates set forth in the Scheduling Order, submits this *Motion for Summary Judgment* pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I. MOTION FOR SUMMARY JUDGMENT

In its Complaint, **THE NATIONAL HISPANIC CIRCUS, INC.** ("Plaintiff"), set forth claims and allegations for damages relative to Rex. These claims and allegations are not supported by fact or law. Therefore, Defendants move this Court for Summary Judgment on the grounds that there is no genuine issue of material fact relative to Plaintiff's claims against Rex; and, therefore, Rex is entitled to Summary Judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, for the reasons set forth in the Memorandum in Support, *infra*, Defendants, **REX TRUCKING, INC.** and **THE MASON AND**

DIXON LINES, INC., respectfully request an Order granting their Motion for Summary Judgment, dismissing all of Plaintiff's claims, with prejudice, at Plaintiff's cost; and for all such further relief, both general and special, at law or in equity, to which Defendants may be justly entitled.

## II. MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1.      REX TRUCKING, INC. and THE MASON AND DIXON LINES, INC., respectfully requests that this Honorable Court grant Summary Judgment and dismiss with prejudice all of Plaintiff's claims with respect to REX TRUCKING, INC.

### A. Introduction

2.      Plaintiff, THE NATIONAL HISPANIC CIRCUS, INC. ("Plaintiff") is a self-described non-profit traveling bilingual circus that used to perform throughout the United States. The Defendants, REX TRUCKING, INC. ("Rex") and THE MASON AND DIXON LINES, INC. ("Mason and Dixon"), are trucking companies that transport and deliver cargo.

### B. Statement of Facts

3.      Plaintiff alleges that on or about August 27, 2001, Plaintiff entered into a contract with Rex and/or Mason and Dixon to provide drivers and trucks to transport seven (7) Circus trailers, one of which contained one-half set of bleachers, from Harlingen, Texas to Chicago, Illinois. Plaintiff alleges that the trailers and their contents were to be delivered prior to Plaintiff's scheduled performance in Chicago, Illinois on August 31, 2001.

4.      Before the delivery was to be made, on or before August 31, 2001, prior to Plaintiff's scheduled performances in Chicago, the trailer containing the one-half (1/2) set of bleachers, for reasons which are unclear, did not arrive.

5.      Plaintiff alleges it was delayed in setting up the Chicago performances, was forced to rent bleachers to carry out the scheduled Chicago performances, and was forced to eventually purchase replacement bleachers.  The Plaintiff contends that the rented bleachers provided less seating than the temporarily missing bleachers; thus, the Plaintiff claims it suffered from reduced ticket sales.

6.      On July 7, 2003, Plaintiff filed its Second Amended Complaint ("the Complaint"). The Complaint alleges a causes of action against Defendants for violations of 49 U.S.C. §14706, *et seq.* ("The Carmack Amendment") and breach of agreement for failure to deliver a one-half (1/2) set of bleachers and one (1) trailer under the terms of the contract allegedly entered into with Rex and/or Mason and Dixon.   However, the missing bleachers were later recovered.

7.      Plaintiff is seeking damages for the cost of rented bleachers, the alleged resulting loss of ticket sales revenues, and the alleged costs related to the purchase and shipment of replacement bleachers.

## C. Motion for Summary Judgment Standard

8.      A Motion for Summary Judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, and the jurisprudence that interprets same.  Under federal jurisprudence, the trial Court must determine whether there is any genuine issue of material fact relative to the substance of the Motion before the Court.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 – 252 (1986).  The trial Court must also determine whether the movant is entitled to judgment as a matter of law. *See Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 804 (1999).

10.      Upon filing a Motion for Summary Judgment, the initial burden of proof is with the movant.  However, this burden shifts during the motion process.  Once the movant establishes that there is an absence of evidence in support of the non-movant's claim(s) at issue, the burden then shifts to the non-movant to show that a genuine issue of material fact remains

3

in spite of that alleged within the Motion for Summary Judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

11.     Furthermore, the burden, once shifted to the non-movant, is not met by said party simply proffering a "plausible scenario," in the abstract, that could potentially defeat the movant's motion.   The non-movant must meet its burden through direct, contrary, and competent evident. *See  Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998); *see also Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 545 (5th Cir. 2000).

12.     Therefore, once a Motion for Summary Judgment has been properly supported by the movant, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the Motion for Summary Judgment. *See id.*

### D. <u>Summary Judgment Evidence</u>

13.     In support of their motion, Defendants include evidence in the attached appendix. The Motion for Summary Judgment is based upon the following proof included in the appendix:

    a.    <u>Documentary Evidence:</u>    The exhibits, which are identified as authentic and listed below, establish the following facts:

        i.    <u>Asset Purchase Agreement.</u> The Asset Purchase Agreement (a copy of which is attached hereto as Exhibit "A") establishes that Mason and Dixon purchased the name "Rex Trucking" and its physical assets on August 15, 2001, at least twelve (12) days prior to any possible alleged contact with Plaintiff and any possible alleged loss sustained by Plaintiff. *See* Exhibit "A" ¶20, "Sale and Purchase of Assets."

    b.    <u>Affadavits.</u>    The affidavits of the following persons:

        i.    **Leo Blumenauer ("Blumenauer"), Representative of Mason and Dixon Lines, Inc.:**    Blumenauer's affidavit, attached hereto as Exhibit "A-1" establishes that

4

the intent of the Agreement was to transfer all assets and liabilities that were incurred after the sale to Mason and Dixon; thus, Mason and Dixon recognizes that the loss, if any, that occurred in this case properly falls to Mason and Dixon. Exhibit "A-1" also establishes the authenticity of the Agreement

## D. Argument and Analysis

14.     On or about February 28, 2003, at the Court's scheduling conference, Rex Trucking presented documents to Plaintiff indicating that another entity, Mason and Dixon, purchased Rex and its assets. The documents presented by Rex to Plaintiff included an Asset Purchase Agreement ("the Agreement") Exhibit "A."

15.     Under the terms of the Agreement, Rex closed on the sale and purchase of assets on August 15, 2001. *See* Exhibit "A-1", ¶ 20.  Possession of the purchased assets was to be delivered to Mason and Dixon after 11:59 P.M. on August 26, 2001. *See* Exhibit A, ¶ 20. Though Plaintiff may have entered into a contract with the company named "Rex Trucking, Inc.," Rex's assets, including the name "Rex Trucking" were in the possession of Mason and Dixon on the date of the alleged contract, August 27, 2001 and the date of the alleged loss, on or after August 27, 2001.

16.     The intent of the Agreement was to transfer all assets and liabilities of Rex that were incurred after the sale of Rex to Mason and Dixon. *See* Exhibit "A-1."

17.     Losses if any, that occurred after the date of possession, August 27, 2003, were intended to be incurred by Mason and Dixon, not Rex.  Because the date of the alleged contract and alleged loss occurred on or after the date of closing, Mason and Dixon recognizes that the loss, if any, that occurred in this case properly falls to Mason and Dixon.  *See* Exhibit "A-1"

## F. Conclusion

WHEREFORE, PREMISES CONSIDERED, for the reasons set forth, *supra*, Defendants,

REX TRUCKING, INC. and **THE MASON AND DIXON LINES, INC**, respectfully request an

Order granting their Motion for Summary Judgment, dismissing all of Plaintiff's claims as to

REX TRUCKING, INC, with prejudice, at Plaintiff's costs; and for any such other and further

relief, both general and special, at law or in equity, to which Defendants may be justly entitled.

Respectfully Submitted,

*JEANSONNE & REMONDET, L.L.C.*

By: _____

Michael A. Pita
State Bar No. 24034628
Federal Bar No. 32169
ATTORNEY-IN-CHARGE
1200 Smith Street, Suite 2220
Houston, Texas 77002
Telephone: (713) 752-0300
Telecopier: (713) 752-0410

**ATTORNEY FOR DEFENDANT,**
**THE MASON AND DIXON LINES**

OF COUNSEL:

JEANSONNE & REMONDET, L.L.C.
1200 Smith Street, Suite 2220
Houston, Texas 77002
Telephone: (713) 752-0300
Telecopier: (713) 752-0410

*HOOVER SLOVACEK, L.L.P.*

By: *Patricha D. Sullivan* (w/ permission MHP)

G. STEPHEN PARROTT
State Bar Number:
PATRICK D. SULLIVAN
State Bar Number: 00791758
Federal Bar No.: 18191
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile: 713.977.5395

**ATTORNEYS FOR DEFENDANT,
REX TRUCKING, INC.**

OF COUNSEL:

**HOOVER SLOVACEK, L.L.P.**
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile: 713.977.5395

## CERTIFICATE OF CONFERENCE

Pursuant to the Local Rules, the undersigned counsel states that the opportunity to confer with opposing counsel is not appropriate, as this is a dispositive motion.

Patrick D. Sullivan

Michael A. Pita


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to the following counsel of record by certified mail, return receipt requested, and/or hand delivery on this the 14 day of November, 2003:

Stephen J. Chapman
BARKER, LEON, FANCHER & MATTHYS, L.L.P.
Tower II- Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
**VIA CM/RRR # 7003 1680 0004 1962 4562**

Roger Albright
LAW OFFICES OF ROGER ALBRIGHT
3301 Elm Street
Dallas, Texas 75226-1637
**VIA CM/RRR # 7003 1680 0004 1962 4579**

Patrick D. Sullivan

Michael A. Pita

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC. A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-02-135 |
| | § | |
| REX TRUCKING, INC., A TEXAS | § | |
| CORPORATION, AND THE MASON | § | **JURY DEMANDED** |
| AND DIXON LINES, INC. A MICHIGAN | § | |
| CORPORATION | § | |
| Defendants | § | |

### FINAL JUDGMENT AS TO REX TRUCKING, INC.

BE IT REMEBERED that on this date, came to be heard **REX TRUCKING, INC.** and **THE MASON AND DIXON LINES, INC.'S**, Motion for Summary Judgment. The Court, having considered the Motion, the pleadings, the arguments of counsel, if any, and all other evidence on file, is of the opinion that the Motion is meritorious and should, in all things, be granted. It is therefore

ORDERED, ADJUDGED, AND DECREED that Defendants, **REX TRUCKING, INC.** and **THE MASON AND DIXON LINES, INC.'S**, Motion for Summary Judgment is hereby granted. It is further

ORDERED, ADJUDGED, AND DECREED that all claims asserted by Plaintiff, **THE NATIONAL HISPANIC CIRCUS** against **REX TRUCKING, INC.** are dismissed, with prejudice.

All relief not expressly granted herein is DENIED.

Signed this _____ day of _____, 2003.

_____
PRESIDING JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

*JEANSONNE & REMONDET, L.L.C.*

By: _____
　　　Michael A. Pita
　　　State Bar No. 24034628
　　　Federal Bar No. 32169
　　　ATTORNEY-IN-CHARGE
　　　1200 Smith Street, Suite 2220
　　　Houston, Texas 77002
　　　Telephone:  (713) 752-0300
　　　Telecopier:  (713) 752-0410

ATTORNEY FOR DEFENDANT,
THE MASON AND DIXON LINES

*HOOVER SLOVACEK, L.L.P.*

By: _____ (w/ permission MAP)
　　　G. STEPHEN PARROTT
　　　State Bar Number:
　　　PATRICK D. SULLIVAN
　　　State Bar Number: 00791758
　　　Federal Bar No.: 18191
　　　5847 San Felipe, Suite 2200
　　　Houston, Texas  77057
　　　Telephone: 713.977.8686
　　　Facsimile: 713.977.5395

ATTORNEYS FOR DEFENDANT,
REX TRUCKING, INC.



SEP 25 2002 08:38 FR                        7137824849 TO    ~~875395      P.02/17
AUG 14 '01 17:20 FR MADL-UACL              800 343 6889 TO S  137824849    P.01

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement is entered into this ___ day of August, 2001, between **The Mason and Dixon Lines, Inc. ("Purchaser")**, a Michigan corporation, **Rex Trucking, Inc. ("Rex")**, a Texas corporation, **Loadhunter, Inc. ("Loadhunter")**, a Texas corporation, **Magnolia Transport, Inc. ("Magnolia")**, a Texas corporation, **Specialty Trucking I, Inc. ("Specialty Trucking")**, a Texas corporation, **J.D. Smith ("Smith")**, **Mark Fisher ("Fisher")**, **Harvey R. Houck, Jr. ("Houck")** and **G. P. Bourrous ("Bourrous")**. Hereinafter Rex, Loadhunter and Magnolia shall sometimes be collectively referred to as the "Sellers," and Specialty Trucking, Smith, Fisher, Houck and Bourrous shall sometimes be collectively referred to as the "Shareholders."

In consideration of the mutual promises and agreements contained herein, the parties hereto agree as follows:

1.    **Sale and Purchase of Assets.**    Each Seller hereby sells, assigns, conveys, transfers, sets over and delivers to the Purchaser all of:

      (a)    the respective office equipment, furniture, fixtures, computers, software (and all leases and licenses with respect thereto), telephones, communications equipment, and other miscellaneous equipment and files owned by each Seller or in which each Seller has any interest of any kind (the "Office Equipment");

      (b)    the respective lists of independent contractors, including Owner/Operators, with respect to which each Seller does business (the "Contractors");

      (c)    the respective lists of each Seller's sales agents (the "Sales Agents");

      (d)    the respective lists of each Seller's customers (the "Customers");

SEP 25 2002 09:39 FR                    7137804849 TL    775395        P.03/17
                                        800 343 6889 TO    37804849      P.02

 

(e)     the rights of each respective Seller under the lease for the facility known as 505 North Belt, Suite 530, Houston, Texas 77060 (the "Office Lease");

(f)     all rights to all logos, marketing names, corporate names and other proprietary rights of whatsoever kind or nature of each Seller;

(g)     the right to interview and hire employees from the respective employee complements of each Seller, without hindrance or interference;

(h)     the trailers listed on Exhibit A (the "Trailers").

(i)     at Purchaser's option, such office equipment leases as Purchaser may elect, by written notice to Sellers at closing, to assume (and the office equipment covered thereby) [the "Assumed Equipment Leases"].

Hereinafter, the foregoing assets shall be referred to as the "Purchased Assets." The Purchased Assets include, without limitation, any assets listed on Exhibit A attached hereto and the unrestricted right to use all telephone and fax numbers. Each Seller shall, from time to time, execute and deliver to Purchaser such bills of sale, assignments and other conveyance documents as Purchaser may request, from time to time, to convey good and marketable title to the Purchased Assets to Purchaser. At the closing, each Seller shall also deliver releases of any and all security interests covering any of the Purchased Assets.

2.     **Purchase Price for Purchased Assets.**

(a) (i) The purchase price to be paid for the Office Equipment, excluding Office Equipment covered by the Assumed Equipment Leases, shall be the average of three (3) wholesale valuations therefor provided by used furniture and office equipment dealers in the Houston Market reasonably satisfactory to Purchaser and Sellers. A representative of Purchaser will coordinate and review these estimates. To maintain confidentiality with the general office employees, the valuation and subsequent payment for the Office Equipment will occur within the first thirty (30) days following the closing, to be paid in cash. The purchase price for the Trailers (including trailers described in Section 18), will be the fair market value thereof at time of

purchase, which Purchaser and Sellers ▉▉▉▉▉▉▉▉▉  The payment for the purchased Trailers will occur on the day of closing.

(ii)    In consideration of the sale and purchase of the remainder of the Purchased Assets, the Purchaser shall pay to the Sellers, as a group, on a monthly basis, an amount equal to two percent (2%) of the adjusted freight bill revenue (minus fuel surcharge, accessories, permits and escorts) [hereinafter "Freight Bill Revenue"] which is invoiced by the Division (as hereafter defined) during the eighteen (18) month period following the Possession Date referred to in Section 20 ("Payment Term") which is generated by the Sales Agents listed on attached Exhibit B ("Contingent Purchase Price").  Any new Sales Agent procured by and assigned to Purchaser's operating division to which the Purchased Assets are assigned (the "Division") shall be added to Exhibit B by amendment thereto.  The Contingent Purchase Price shall be payable on the fifteenth (15th) day of each calendar month of the Payment Term with respect to the Freight Bill Revenue invoiced by the Division during the prior calendar month. Provided, however, that the Contingent Purchase Price paid in any calendar month shall not be less than ▉▉▉▉▉▉▉▉▉▉▉Dollars, nor shall the aggregate Contingent Purchase Price paid exceed▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Dollars.  In the event that aggregate payments of Contingent Purchase Price shall equal ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉Dollars prior to the expiration of the Payment Term, no further payments of Contingent Purchase Price shall thereafter be due or payable.

(b)    The Purchaser shall collect, and also pay to the Sellers, receipts received for all bills that are dated through 11:59 pm on the day immediately prior to the Possession Date. The Sellers will be responsible for all collection action for unpaid bills.

-3-

(c)    The Purchaser shall have the right to deduct and offset, from Contingent Purchase Price otherwise payable hereunder, an amount equal to (i) those charges incurred by the Purchaser that are determined to have occurred prior to the Possession Date, including, but not limited to, freight claims, Owner/Operator claims, Agent claims, employee claims or any charge or debt that will effect the operational or administrative ability of the Division ("Pre-Possession Liabilities"), in the manner described below; and (ii) all other amounts of whatsoever kind or nature owing to the Purchaser by any of the Sellers or any of the Shareholders. It is expressly agreed and understood, however, that the Purchaser's right to deduct and offset Pre-Possession Liabilities from payments of Contingent Purchase Price shall be conditioned upon the Purchaser first giving the Sellers written notice of each such Pre-Possession Liability. The Sellers shall then have thirty (30) days in which to pay or satisfy such Pre-Possession Liability and furnish documentation of such payment or satisfaction to the Purchaser, in which case such Pre-Possession Liability shall not be deducted and offset from the Contingent Purchase Price. In the event the Sellers are either unwilling or unable to pay or satisfy such Pre-Possession Liability within said thirty (30) day period, the Purchaser's right to deduct and offset same from Contingent Purchase Price shall then become absolute.

(d)    Payment of Contingent Purchase Price amounts shall be accompanied by a certified statement of Contingent Purchase Price prepared by the Purchaser. The Sellers shall review the statement of Contingent Purchase Price upon receipt and advise the Purchaser, in writing, of any errors, discrepancies or failures to include Freight Bill Revenue for which the Sellers claim to be entitled to payment. Upon the failure of the Sellers to submit such a written notice to the Purchaser within ten (10) days following the date of the statement of Contingent Purchase Price, the statement of Contingent Purchase Price rendered will be deemed accurate.

and the Sellers shall be deemed to have forever waived the right to challenge same at any time in the future.

(e)     No payments of whatsoever kind or nature shall be due under this Agreement with respect to Freight Bill Revenue invoiced by the Division following the date which is eighteen (18) months after the Possession Date.

(f)     All payments of Contingent Purchase Price and other amounts shall be paid to Specialty Trucking, as collection and disbursement agent, who shall be solely responsible to allocate same between the Sellers in the manner in which the Sellers have agreed in writing. The Purchaser shall have no obligation to verify or participate in the allocation of the payment of Contingent Purchase Price or other amounts between the respective Sellers. Provided, however, that in the event Purchaser receives written instructions signed by each of the Sellers and Specialty Trucking directing Purchaser to make payments of the amounts due hereunder, other than the payments of the Contingent Purchase Price, directly to certain of the Sellers as specified in such written notice, than Purchaser shall make such payments in accordance with those written instructions.

3.     **Engagement of Smith as President.**  Smith agrees to serve as President of the Division at his current base salary of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for a period of six (6) months. Smith will perform his managerial duties as an employee of the Division.

4.     **No Changes With Respect to Sales Agents or Owner/Operators.**  Purchaser agrees that in doing business with the Sales Agents and Owner/Operators listed on attached Exhibit B and Exhibit E(1), it shall conduct business with such Sales Agents and Owner/Operators on the same payment terms and programs as previously conducted by the respective Sellers during the first three (3) months following the Possession Date.

-5-

5.  **Assumed Leases**.  The Purchaser agrees that it shall assume the responsibility for the Office Lease, a copy of which is attached as Exhibit C, any assumed software leases and the Assumed Equipment Leases from and after the Possession Date.  The Sellers, Specialty Trucking and the Shareholders acknowledge that the Purchaser shall not have any responsibility whatsoever for obligations under the assumed software lease(s), Office Lease or the Assumed Equipment Leases arising prior to the Possession Date and each Seller hereby assigns to Purchaser its respective rights in such assumed software lease(s), Office Lease and the Assumed Equipment Leases, and represent and warrant to the Purchaser that the respective lessee(s) under the assumed software lease(s), Office Lease and the Assumed Equipment Leases have performed and will perform all obligations under the lease(s) involved through the Possession Date and are not in default thereunder.  The Sellers shall provide all requisite lessor and other consents to such assignment(s) at or prior to closing.

6.  **No Liabilities Assumed**.  The Sellers and the Shareholders acknowledge and agree that the Purchaser is purchasing only certain assets of the respective Sellers and not their stock or any stock in any subsidiary.  Except as expressly set forth in this Agreement in connection with any assumed software lease(s), the Office Lease, the Assumed Equipment Leases and under Section 17 as to the Owner/Operator escrows, the Purchaser is not assuming any liabilities of or claims against any of the Sellers of whatsoever kind or nature, whether accrued, absolute, contingent, known, unknown or otherwise, including, without limitation, any claims of any creditors, claimants or owners of any Seller (collectively the "Unassumed Liabilities").  The Sellers, Specialty Trucking and the Shareholders, jointly and severally, agree to pay the Unassumed Liabilities as due and to defend, indemnify and hold harmless the Purchaser with respect to the Unassumed Liabilities.

-6-

SEP 25 2002 08:40 FR
AUG 14 '01 17:23 FR PHL. CHLL       7137804849 TC    7775395    P.8/17
                                    800 543 6669 .L    3784849     P.8 C

7.   <u>Delivery Free of Encumbrances.</u>  Each of the Sellers shall deliver good title to the Purchased Assets owned by such Seller, free and clear of all mortgages, liens, claims, demands, charges, options, equity interests, leases, tenancies, easements, pledges, security interests and other encumbrances of whatsoever kind or nature, and the Sellers, Specialty Trucking and the Shareholders, jointly and severally, agree to defend, indemnify and hold harmless the Purchaser with respect thereto.

8.   <u>Governing Law/Jurisdiction.</u>  This Agreement shall be governed by Michigan law.  Each of the Sellers, Specialty Trucking and the Shareholders consent to the jurisdiction and venue of the State and Federal Courts of the State of Michigan with respect to any dispute which might arise pursuant to this Agreement.

9.   <u>Confidential Information.</u>  Specialty Trucking and each of the Sellers and Shareholders, jointly and severally, agree to keep secret and confidential all confidential information of each Seller, as well as any confidential information of the Purchaser and affiliates of the Purchaser, of which they have or obtain knowledge, and shall not use or disclose this confidential information at any time hereafter, without the express prior written consent of the Purchaser.  For the purposes of this paragraph:  (a)  "Confidential Information" shall mean information not generally known to the public, including, but not limited to, matters of a technical nature, such as "know how," innovations, research projects and methods; matters of a business nature, such as information about customers, costs, profits, markets, sales, business processes, computer programs, accounting methods, information systems and business or financial plans and reports; and any other information of a similar nature; and (b) "affiliate" shall mean any corporation or other entity controlled by, under common control with or otherwise related by common ownership to Purchaser.  Further, no Seller or Shareholder shall use the name

of any of the Sellers, the Purchaser (or any affiliate thereof) or any assumed names or identity of any of such entities to its or his own personal advantage. Upon the request of the Purchaser, each Seller and Shareholder, and Specialty Trucking, shall deliver to the Purchaser all records or documents, including all copies thereof, which contain Confidential Information, including, but not limited to, documents such as memoranda, notes, records and manuals in whatsoever medium stored.

10.   **Noncompetition.**   During the period of five (5) years following the Possession Date (the "Covenant Term"), Specialty Trucking and each Seller and Shareholder agree that each will not, directly or indirectly (a) compete with the trucking business conducted by the Purchaser, or any of its divisions, subsidiaries or affiliates, within any geographic territory in which the same do business; or (b) contact any customer of the Purchaser, its divisions, subsidiaries or affiliates, on behalf of himself or itself or any other person, firm, company, corporation or other entity, for the purpose of selling any trucking service which is similar to, or competes with, any trucking service offered for sale by the Purchaser, or such division, subsidiary or affiliate. Provided, however, that the Covenant Term with respect to any Shareholder who is employed by the Purchaser (or any division, subsidiary or affiliate thereof) shall be the longer of (y) five (5) years following the Possession Date or (z) the period of such employment plus five (5) years. For the purposes of this paragraph, "Customer" shall include any person, firm, company, corporation or other entity that has purchased any trucking services from any of the Sellers or from the Purchaser (or from any division, subsidiary or affiliate thereof) prior to the date of this Agreement or during the Covenant Term.

Purchaser acknowledges that Specialty Trucking operates a trucking subsidiary, "Nighthawk Transportation," which primarily hauls hazardous materials and certain other related

-8-

SEP 25 2002 08:41 F                        713 804849 T      9775395      P. 10/17
AUG 14 '01 17:24 FR MAL    ACL            800 343 6899 L    9 304849      P.09

products generated or handled by its customers and agrees that the continued operation of Nighthawk Transportation to haul such hazardous materials and related products shall not constitute competition by or a conflict of interest on the part of Specialty Trucking with respect to this Agreement.

Specialty Trucking, and the Sellers and Shareholders acknowledge that by entering into this Agreement they are attempting to limit their right to compete herein only to the extent reasonably necessary to protect the Purchaser, its divisions, subsidiaries and affiliates, from unfair competition, and acknowledge that each will be able to do business and/or to earn a living without violating the foregoing restrictions. However, the parties agree that if a court of competent jurisdiction determines this restrictive covenant to be unenforceable as to any of them, the court shall modify and enforce the covenant to the fullest extent permitted under applicable law.

11.    **Nonsolicitation of Employees, Agents and Contractors.**  Specialty Trucking and each of the Sellers and Shareholders, jointly and severally, agree that for a period commencing on the date hereof and expiring five (5) years following the Possession Date, they shall not, severally or jointly, solicit or contact the employees or Contractors of any of the Sellers (including the Sales Agents and Owner/Operators) for the purpose of employment or other business relationships.

12.    **Injunctive Relief.**  Specialty Trucking and the Sellers and Shareholders acknowledge and agree that a breach or threatened breach of the provisions of Sections 9, 10 or 11 may result in irreparable injury for which there is no adequate remedy provided by law, and that the aggrieved party shall be entitled to an injunction to prevent a breach or threatened breach of any obligations contained therein.

-9-

13.   **Notices.**  All notices, requests, demands and other communications hereunder shall be in writing, and shall be deemed to have been duly given if delivery or mailed, first class, postage prepaid, certified mail return receipt requested, to the Sellers at:  7880 San Felipe, Suite 207, Houston, Texas 77063; to the Purchaser at:  12225 Stephens Road, Warren, Michigan 48089, Attention:  Robert Sigler.

14.   **Entire Agreement.**  This Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and all prior or contemporaneous agreements, representations and warranties shall be deemed to be merged herein.

15.   **Assignability.**  The Purchaser may assign his obligations under this Agreement to any division, subsidiary, affiliate or other business unit designated by the Purchaser for the purpose of operating a business utilizing the Purchased Assets.

16.   **Representations and Warranties of the Sellers and the Shareholders.**  Specialty Trucking and the Sellers and Shareholders, jointly and severally, hereby represent and warrant to the Purchaser that:

(a)   the Shareholders own 100% of the issued and outstanding stock of Specialty Trucking;

(b)   Specialty Trucking is the sole shareholder of each of the Sellers;

(c)   this Agreement, and the consummation of the transaction contemplated hereby, has been duly and properly approved and authorized by the unanimous affirmative vote of the boards of directors and shareholder(s) of Specialty Trucking and each Seller;

(d)   they have made, in writing, full disclosure to the Purchaser of all of the known liabilities of the respective Sellers, and, to their knowledge and after due inquiry,

-10-

there are no liabilities or pending or threatened claims, lawsuits, or other matters of a detrimental economic or business nature applicable to any Seller except as has been expressly disclosed to the Purchaser in writing; and

(c)    they have not omitted to disclose any known material fact, or knowingly, after due inquiry, made a misstatement of any material fact, that would be deemed relevant for consideration by any reasonable purchaser in entering into an agreement of this type.

Specialty Trucking and the Sellers and the Shareholders shall, jointly and severally, defend, indemnify and hold harmless Purchaser from any breach of any representation and warranty contained in this Agreement and from any other default under this Agreement.

17.    **Assumption of Liability to Refund Owner/Operator Escrows**. Purchaser shall be responsible to refund the Owner/Operator escrows previously held by any of the Sellers (the "Owner/Operator Escrows") to the extent that the same are allocable to Owner/Operators who become active Owner/Operators of the Division from and after the Possession Date and whose relationship with the Division terminates on a date more than three (3) months after becoming an active Owner/Operator of the Division. Sellers shall be responsible to refund any Owner/Operator Escrows allocable to Owner/Operators who do not become active Owner/Operators of the Division for at least three (3) consecutive months from and after the Possession Date. Specialty Trucking, each of the Sellers and each of the Shareholders, represent and warrant to the Purchaser that the applicable escrow amount with respect to each Owner/Operator is as shown on Exhibit D.

18.    **Lease/Purchase Trailers**. Certain of the Trailers are subject to lease/purchase agreements with Owner/Operators (the "Lease/Purchase TrailersPurchaser's purchase of the

-11-

SEP 25 2002 08:42 F
AUG 14 '01 17:25 FR  ~L    ACL
713*804849  11    89775395    P.19 17
800 343 6889 TC      37804849    P.12

Lease/Purchase Trailers shall be made free and clear of all security interests and other encumbrances (but shall be subject, however, to the rights of the Owner/Operators involved).

19.    **Seller Owned Tractors.**    It is agreed that the Sellers are not selling to the Purchaser, and the Purchaser is not purchasing, any tractors owned by any of the Sellers.  All such tractors shall be retained by the Sellers involved and will be leased for use by the Division by separate documentation on an Owner/Operator basis (the "Separate Tractor Documentation"). The Sellers will ultimately be responsible for maintaining and replacing drivers with respect to such tractors.  While the Division will assist in the recruiting effort, it will at no time be responsible for providing drivers.  The Division will provide dispatch and fleet management services to the tractors involved.  It is contemplated that the Separate Tractor Documentation will provide that the tractors will be treated on an Owner/Operator basis, with settlement at the rate of seventy-five (75¢) cents on the dollar, and all other provisions normally provided to an Owner/Operator will be provided with respect to these tractors.  The owner of the tractors involved will provide instructions for settlements and deductions to the Division.

20.    **Closing; Survival.**    The closing shall take place on August 15, 2001.  All agreements, covenants, representations and warranties contained in this Agreement shall survive the closing. Possession of the Purchased Assets and of the office covered by the Office Lease shall be delivered August 27, 2001 (the "Possession Date").  Purchaser shall be provided access to Sellers' offices and personnel between the date of closing and the Possession Date for such purposes as it deems appropriate. Sellers shall insure all of the Purchased Assets against loss or damage due to fire, accident or other casualty in an amount equal to the replacement cost thereof until possession is delivered to Purchaser.  All proceeds from such insurance shall be payable to Purchaser.  Sellers shall add Purchaser as an additional insured to all policies of liability

-12-

Sep 11 02 12:44p

SEP 25 2003 08:42
Case 1:02-cv-00135 Document 40    Filed in TXSD on 11/19/2003    Page 24 of 27
7137804849 TC    29775395    P.17/17

insured to all policies of liability insurance carried by Sellers through the later of closing or the

Possession Date, and Sellers, Specialty Trucking and the Shareholders, jointly and severally,

shall defend, indemnify and hold harmless Purchaser from any loss, liability, judgments, claims,

expense or other pecuniary detriment, arising by virtue of Seller's possession and use of the

Purchased Assets after the closing through delivery of possession thereof to Purchaser.

"Purchaser"

THE MASON AND DIXON LINES, INC.

By: _____

Its: _____

"Shareholders"

_____
J.D. Smith

_____
Mark Fisher

_____
Harvey R. Houck, Jr.

_____
G.P. Bourrous

SPECIALTY TRUCKING I, INC.

By: _____
Its: _____
271155

"Sellers"

REX TRUCKING, INC.

By: _____

Its: _____

LOADHUNTER, INC.

By: _____

Its: _____

MAGNOLIA TRANSPORT, INC.

By: _____

Its: _____

-13-



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC. A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-02-135 |
| | § | |
| REX TRUCKING, INC., A TEXAS | § | |
| CORPORATION, AND THE MASON | § | JURY DEMANDED |
| AND DIXON LINES, INC. A MICHIGAN | § | |
| CORPORATION | § | |
| Defendants | § | |

## AFFIDAVIT

STATE OF ___*OHIO*___ §
§
COUNTY OF ___*MAffoNicuG*___ §

BEFORE ME, the undersigned authority, a Notary Public, personally appeared Leo Blumenauer, known to me to be the person whose name is subscribed below, who after being duly sworn by me, upon his oath deposed and stated:

"My name is Leo Blumenauer. I am over the age of twenty-one (21) and am fully competent to make this affidavit. I have personal knowledge of the facts stated within this affidavit and the facts are true and correct.

Attached hereto as Exhibit "A-1" is a true and correct copy of the "Asset Purchase Agreement" ("the Agreement") entered into between Rex Trucking, Inc. ("Rex") and The Mason and Dixon Lines, Inc. ("Mason and Dixon'). As indicated in Paragraph 20 of the Agreement, Rex was sold to Mason and Dixon on or about August 15, 2001, prior to the date of the alleged contract and loss in this case. The intent of the Agreement was to transfer all assets and liabilities that were incurred after the sale of Rex to Mason and Dixon. Losses that occurred after the date of closing were intended to be incurred by Mason and Dixon, not Rex. Mason and Dixon recognizes that the loss, if any, that occurred in this case properly falls to Mason and Dixon.

Further the affiant sayeth not."

Signed this ___6^TCC___ day of ___*NOU*___ 2003.



REPRESENTATIVE OF THE MASON AND
DIXON LINES INC.

SUBSCRIBED AND SWORN TO BEFORE ME on this ____ day of _____ 2003, to certify which witness my hand and seal of office.

NOTARY PUBLIC

SANDRA L. REYNOLDS, Notary Public
In and for the State of Ohio
My Commission Expires May 11 2005

Page 2