$4^a$

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

BROWNSVILLE DIVISION

JAN 0 6 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC., A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-135 |
| | § | |
| REX TRUCKING, INC., A TEXAS | § | |
| CORPORATION | § | |
|     Defendant | § | |
| | § | |
| and | § | |
| | § | |
| THE MASON AND DIXON LINES, INC., | § | JURY DEMANDED |
| A MICHIGAN CORPORATION | § | |
|     Defendant/Counter-Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC., A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
|     Counter-Defendant | § | |

## DEFENDANT'S, THE MASON AND DIXON LINES, SUPPLEMENTAL MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF ALLEGED LOST REVENUE AND/OR ALLEGED REPLACEMENT COST

### I.    INTRODUCTION

1.    Plaintiff has brought this lawsuit seeking to recover damages arising from Defendant's failure to deliver a trailer with "reasonable dispatch," as required pursuant to the Carmack Amendment to the Interstate Commerce Act. See Plaintiff's Second Amended Complaint, ¶¶ 12, 15, attached hereto as Exhibit "A", *see also* 49 U.S.C. 14706 et seq. While Plaintiff is entitled to recover certain reasonable and foreseeable damages, Plaintiff is also seeking to recover certain damages which are not recoverable as a matter of well settled law. See Exhibit "A." Specifically, Plaintiff intends to introduce evidence of alleged lost revenue, and the

purchase price of new bleachers ordered from Italy. See Exhibit "A", ¶20.    Because any lost

revenue and/or the purchase price of new bleachers are not recoverable on the facts of this case,

Defendant respectfully request an order precluding the introduction of any evidence regarding

supposed lost revenue or the purchase price of new bleachers.

## II.    FACTUAL BACKGROUND

2.    On or around August 27, 2001, Plaintiff engaged Defendant to transport seven (7)

cargo trailers belonging to Plaintiff from Harlingen, Texas to Chicago, Illinois. See Exhibits

attached to deposition of Leo Blumenauer, attached hereto as Exhibit "B." Plaintiff did not

provide Defendant with any description of the contents of those trailers. See Id. Moreover,

Plaintiff did not provide Defendant with any notice of any special damages that Plaintiff would

accrue in the event the contents of the trailers were lost or delayed in transit. See Id.

3.    Defendant delivered six (6) of Plaintiff's trailers to Chicago without incident and

within a reasonable amount of time.  See Joint Pre-Trial Order, attached hereto as Exhibit "C."

The seventh trailer, however, did not arrive with the others.  See Exhibit "C." It was temporarily

misplaced during transit.  Plaintiff claims that this trailer contained a one-half (1/2) set of

bleachers that Plaintiff used for spectator seating for its traveling circus shows.  See Exhibit "A."

Plaintiff had owned these bleachers for some time, and it is undisputed that they were in "used"

condition.

4.    While this trailer was being located, Plaintiff rented replacement bleachers for its

performances in Chicago. See Exhibit "C", $6. However, Plaintiff rented a smaller set of bleachers

than the one-half set of bleachers that was temporarily misplaced in transit.  Plaintiff claims that

this smaller set of bleachers resulted in lost revenue.

5.    After its Chicago performances, Plaintiff did not present any shows until its

November 21, 2001 through December 2, 2001 scheduled performances in Miami.  See Excerpts

of the Deposition of Edwin Rivera, page 10, lines 14-20, attached hereto as Exhibit "D." Plaintiff did not rent replacement bleachers for its performances in Miami. Following the Chicago performances Plaintiff ordered a brand new set of bleachers from Italy. The new Italian bleachers were not shipped to Plaintiff until November 28, 2001. See Air Waybill from Kuehn & Nagel, attached hereto as Exhibit "E."

6.      In the interim, Plaintiff learned that Defendant located the temporarily misplaced trailer containing Plaintiff's one-half (1/2) set of bleachers on November 21, 2001. See Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 7, attached hereto as Exhibit "F." Plaintiff did not, however, cancel its order for the new bleachers from Italy. Instead, Plaintiff accepted delivery of the new Italian bleachers and also accepted the delayed delivery of its used bleachers. Plaintiff retained both sets of bleachers.

7.      Plaintiff filed this suit seeking to recover, *inter alia*, revenue allegedly lost due to diminished seating capacity for its Chicago performances, and the full cost of the new set of bleachers it purchased in Italy. For the reasons discussed below, Defendant submit that neither the alleged lost revenue nor the cost of new bleachers are recoverable on account of Defendant's delayed delivery of Plaintiff's used bleachers, and evidence in connection with either damage claim must be precluded as a matter of well settled law.

## III.   ARGUMENT

8.      In order to determine the relevance of the damage evidence that Plaintiff intends to present at trial, it is important to understand Defendant's duty in connection with the carriage of Plaintiff's freight, as well as the nature of damages recoverable in the event of a breach of the duty. Consequently, Defendant provide a brief overview of the general governing principles, and then address the specific types of damages that are recoverable.

### A.      The duty to transport with reasonable dispatch

9.    In the absence of a contractual or tariff-based duty providing a specific time or schedule for delivery, a common carrier's only duty is to transport freight with reasonable dispatch.  See Paulson v. Greyhound Lines, Inc., 804 F.2d 506, 508 n.5 (8th Cir. 1986) (citing Chicago & A. R.R. v. Kirby, 255 U.S. 155, 164, 32 S.Ct. 648, 649-50, 56 L.Ed. 1033 (1912). Whether a particular shipment was transported within reasonable dispatch depends on the facts and circumstances of each particular case.  Richter v. North American Van Lines, Inc., 110 F.Supp.2d 406, 413 (D.Md. 2000).  A party injured by a carrier's failure to transport freight with reasonable dispatch is entitled to recover damages under the Carmack Amendment.  Id. at 412 (citations omitted).

10.    Assuming that the Defendant's breached the duty to transport Plaintiff's freight with reasonable dispatch, the question becomes what is the proper measure of damages.  As the court in Richter explained:

> Damages recoverable for the breach of the duty to deliver the goods with reasonable dispatch are those normally associated with breach of contract.  They include any damages reasonably foreseeable at the time of entry into the contract, i.e. the bill of lading.  **They also include special damages if notice was given of special circumstances and the defendant impliedly or expressly assented to bearing the risk of these damages.**

Id. at 413 (citations omitted) (emphasis added).

11.    Turning to the application of these principles to the case at bar, Defendant submit that, for the following reasons, Plaintiff should be precluded from presenting evidence of alleged lost profits and the cost of new bleachers.

**B.    Evidence of alleged lost revenue is inadmissible**

12.    Plaintiff has indicated that it intends to seek an award of lost revenue on account of Defendant's delay in delivering Plaintiff's bleachers. See Exhibit "A." Defendant submit that

such evidence is irrelevant, and therefore inadmissible, because Plaintiff cannot establish its entitlement to recover such special or consequential damages.

13.     The Carmack Amendment provides, in pertinent part, that a carrier is liable in damages to the shipper for the actual loss or injury to property. 49 U.S.C. § 11707(a)(1).  Delayed delivery may constitute loss or injury to the property being shipped.  See, e.g., The Paper Magic Group v. J.B. Hunt Transport, Inc., 318 F.3d 458, 461 (3d Cir. 2003).     Regardless whether a claim arises from an actual loss of property, damage to the property, or merely a delay in delivery, "[t]he Carmack Amendment has not altered the common law rule that special, or consequential, damages are not usually recoverable in an action for breach of contract." Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc., 661 F.2d 761, 765 (9th Cir. 1981).  Special or consequential damages are recoverable under the Carmack Amendment only "if the carrier had notice of the special circumstances from which such damages would flow at the time the bill of lading contract was made."   Main Road Bakery, Inc. v. Consolidated Freightways, Inc., 799 F.Supp. 26, 28 (D.N.J. 1992) (collecting cases including Contempo Metal Furniture).

14.     Here, Plaintiff has not and cannot demonstrate that it gave Defendant notice at the time of the formation of the bill of lading contract Defendant's inability to deliver Plaintiff's property by a date certain would result in Plaintiff's loss of any revenue.  There is no way that Defendant could have reasonably known of any such consequences because Plaintiff did not even identify on the bill of lading the nature of the property being shipped.  Defendant did not know whether the contents of the trailer consisted or popcorn, supplies, or bleachers.  The purpose of the notice rule "is to enable the carrier to protect itself from special damages by negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss.  Contempo Metal Furniture, supra at 765. By failing to give notice or even identify

on the bills of lading the nature of the property being shipped, Plaintiff deprived Defendant of the opportunity to protect themselves from the claim Plaintiff now asserts.

15.    As Plaintiff is unable to establish a viable claim for special or consequential damages, alleged lost revenue is not recoverable, and evidence of lost revenue is not relevant. Therefore, this Honorable Court must as a matter of law grant Defendant's motion and enter an order precluding Plaintiff from presenting any evidence of lost revenue.

C.    Evidence of the cost of new bleachers is inadmissible

16.    Defendant believes that Plaintiff intends to present evidence regarding the cost of a new set of bleachers. Evidence of this alleged new purchase is not admissible because the bleachers Plaintiff shipped were not lost and, even if they had been lost, Defendant's liability is limited to the reasonable market value of Plaintiffs bleachers at the time that they were transported.

17.    Given that the bleachers were delivered, albeit with less then reasonable dispatch, Plaintiff's election to purchase new bleachers was a business decision by Plaintiff. Plaintiff now has the new bleachers, as well as the older used bleachers, and is seeking a windfall that is not permitted by law.

18.    Even if the bleachers had been totally destroyed and lost, Plaintiff is not entitled to recover the cost of expensive new bleachers from Italy. Rather, the law is well settled that the proper measure of damages for freight lost in transit is the reasonable market value of the lost property. Eastman Kodak Co. v. Westway Motor Freight, 949 F.2d 317, 319 (10th Cir. 1991) (citing Chicago, M. & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801 (1920)). The cost of new bleachers from Italy bears no relevance whatsoever to the reasonable market value of the older used bleachers Plaintiff tendered to Defendant for carriage based upon the age and condition of those bleachers.

Page 6

19.     Moreover, the fact that Plaintiff kept both its original set of bleachers and its newly purchased set suggests that Plaintiff wanted or needed to increase its seating capacity. It did not buy the new bleachers because its original set was temporarily delayed in transit. If that were the case, Plaintiff would have sold its original bleachers after it received its new bleachers. The reasonable market value of Plaintiff's original bleachers could be shown by an arm's length sale of those bleachers.

20.     It is evident that Plaintiff seeks to make Defendant pay to increase Plaintiff's seating capacity or, at least, pay for an upgrade of Plaintiff's bleachers. That, however, is not a proper measure of damages in this case. The cost of Plaintiff's new set of bleachers is not relevant to any potentially applicable measure of damages in this case. Therefore, this evidence is not admissible.

### III.     CONCLUSION

21.     In light of all of the foregoing reasons, evidence of alleged lost revenue and replacement costs is not admissible. Consequently, this Honorable Court should grant Defendant's motion, and enter an order precluding the presentation of any evidence of lost revenue or the cost of Plaintiff's new set of bleachers.

WHEREFORE, PREMISES CONSIDERED, Defendant, THE MASON AND DIXON LINES, INC. respectfully requests that this Court grant its Motion in Limine and for all such other and further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Respectfully Submitted,

*JEANSONNE & REMONDET, L.L.C.*

By: _____
    Michael A. Pita
    State Bar No. 24034628
    Federal Bar No. 32169
    ATTORNEY-IN-CHARGE
    1200 Smith Street, Suite 2220
    Houston, Texas 77002
    Telephone:  (713) 752-0300
    Telecopier:  (713) 752-0410

**ATTORNEY FOR DEFENDANT,**
**THE MASON AND DIXON LINES**

OF COUNSEL:

JEANSONNE & REMONDET, L.L.C.
1200 Smith Street, Suite 2265
Houston, Texas 77002
Telephone:  (713) 752-0300
Telecopier:  (713) 752-0410

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to the following counsel of record by certified mail, return receipt requested, and/or hand delivery, and/or via facsimile on this the 5th day of January 2004.

Roger Albright
Law Offices of Roger Albright
3301 Elm Street
Dallas, Texas 75226-1637
**VIA OVERNIGHT MAIL: AIRBORNE BILL # 7072062970**

Stephen J. Chapman
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II- Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
**VIA OVERNIGHT MAIL: AIRBORNE BILL # 7072062675**

G. Stephen Parrott
Hoover Slovacek, L.L.P.
5847 San Felipe, Suite 2200
Houston, Texas 77057
**VIA OVERNIGHT MAIL: AIRBORNE BILL # 7072062771**

Michael A. Pita

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC. A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-02-135 |
| | § | |
| REX TRUCKING, INC., A TEXAS | § | |
| CORPORATION | § | |
|     Defendant | § | |
| | § | |
| AND | § | |
| | § | |
| THE MASON AND DIXON, LINES, | § | JURY DEMANDED |
| INC. A MICHIGAN CORPORATION | § | |
|     Defendant/Counter-Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| THE NATIONAL HISPANIC CIRCUS, | § | |
| A NEW YORK NOT-FOR-PROFIT | § | |
| CORPORATION | § | |
|     Counter-Defendant. | § | |

## AFFIDAVIT

| | |
|---|---|
| STATES OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, a Notary Public, personally appeared Michael A. Pita, known to me to be the person whose name is subscribed below, who after being duly sworn by me, upon his/her oath deposed and stated:

"My name is Michael A. Pita. I am licensed to practice law in the State of Texas and the Southern District of Texas and I am employed as an attorney with the law firm of JEANSONNE & REMONDET, L.L.C. I am over the age of twenty-one (21) years of age, have never been convicted of a felony, and am fully competent to make this affidavit.

I am the attorney for Defendant, THE MASON AND DIXON LINES, INC., in the above-styled case and am authorized to make this affidavit. I am actively involved in

this case and the facts stated herein are within my personal knowledge true and correct.

Exhibit 'B' attached to Defendant's Motion for Summary Judgment is true and correct copy of the deposition excerpts of the deposition of Edwin Rivera, which was taken in this matter on October 23, 2003.

Exhibit "D" attached to Defendant's Motion for Summary Judgment is a true and correct copy of the deposition excerpts of the deposition of Leo Blumenauer, which was taken in this matter on November 4, 2003.

Further, the affiant sayeth not.'

_____
MICHAEL A. PITA

SUBSCRIBED AND SWORN BEFORE ME on this the 5th day of January, 2004, to which I witness my hand and official seal.

NORA GALVAN MONTEZ
MY COMMISSION EXPIRES
April 28, 2004

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | ) | |
| CIRCUS, INC., A New York | ) | |
| not-for-profit Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION No. B-02-135 |
| REX TRUCKING, INC., a Texas | ) | |
| Corporation, and THE MASON AND | ) | |
| DIXON LINES, INC., a Michigan | ) | |
| Corporation | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT
## AND JURY DEMAND

Plaintiff, The National Hispanic Circus, Inc., by its attorney Stephen Chapman, for its Complaint against Rex Trucking, Inc. and The Mason and Dixon Lines, Inc., hereby alleges upon knowledge with respect to its own acts, and upon information and belief with respect to all other matters, as follows:

### INTRODUCTION

1.      On or about August 27, 2001 Rex Trucking, Inc. was hired by the Plaintiff to transport and deliver tractors and trailers, one of which contained a set of bleachers, from Harlingen, Texas to Chicago, Illinois.

2.      This action arises from Rex Trucking and/or Mason and Dixon's failure to deliver the Plaintiff's bleachers prior to the Plaintiff's scheduled performance in Chicago, Illinois on August 31, 2001, as a result of the trailers being stolen shortly after

Rex Trucking, Inc. and/or Mason and Dixon took exclusive possession of the trailer containing the bleachers.

3.    During August of 2001, Rex Trucking and/or its assets were purchased by the Mason and Dixon Lines, Inc., a Michigan Corporation.

4.    As will be detailed below, the Plaintiff seeks redress for significant financial losses and damages suffered as a result of the loss of the trailer and bleachers owned by the Plaintiff which had been entrusted by the Plaintiff into the exclusive care, custody and control of Rex Trucking, Inc. and/or the Mason and Dixon Lines, Inc.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6.    This Court has personal jurisdiction over the Defendants because the Defendants entered the contract and provided shipping services to the Plaintiff in the State of Texas.

7    Venue is proper in this District under 28 U.S.C. §1391(c) because a substantial part of the events and transactions giving rise to the claim occurred in this District.

## THE PARTIES

8    The National Hispanic Circus, Inc., d/b/a Circo Mundial (the "Circus"), is a New York State not-for-profit corporation with offices at 315 East Kingsbridge Road, Bronx, New York 10458    The Circus is a traveling bilingual circus that performs

Plaintiff's Second Amended Complaint Page 2

throughout the United States and was performing in Harlingen, Texas at the time the contract was entered.

9.    The Defendant Rex Trucking, Inc. ("Rex Trucking") is a Texas corporation that has been served on its registered agent, G. Stephen Parrott, C/O Hoover Slovaceck, LLP., 5847 San Felipe, Suite 2200, Houston, Texas 77057. Rex Trucking is a trucking company which transports and delivers cargo.

10.    The Mason and Dixon Lines, Inc. ("Mason and Dixon") is a Michigan Corporation that has been served upon its registered agent Willard Lindley, 12225 Stephens, Warren, Michigan 48089. Mason and Dixon is a trucking company which transports and delivers cargo.

## FACTUAL ALLEGATIONS

11.    On or about August 27, 2001 the Circus and Rex Trucking entered into an agreement pursuant to which Rex Trucking was to provide drivers and trucks to transport from Harlingen, Texas to Chicago, Illinois, seven (7) Circus trailers, one of which contained a set of bleachers.  During this same period Rex Trucking and/or its assets were purchased by the Mason and Dixon Lines, Inc.

12.    Under the terms of the agreement, Rex Trucking and/or Mason And Dixon was required to deliver the Circus' trailers and their respective loads to Chicago, Illinois prior to August 31, 2001, the commencement date of the Circus' scheduled tour in Chicago  The Circus required the trailers, specifically the bleachers, to be delivered prior to that date so that the Circus could set up for its performance in Chicago

13.     Based on this agreement, the Circus placed its trailers and their respective loads under Rex Trucking and/or Mason and Dixon's sole and exclusive custody, care, supervision, direction and control.

14.     During the term of this agreement, Rex Trucking and/or Mason and Dixon had exclusive control over its drivers and its trucks, in addition to the means, methods, and details of delivering the trailers to the Circus in Chicago.

15.     Shortly after Rex Trucking and/or Mason and Dixon took possession of the trailers, the truck transporting the Circus' trailer containing the bleachers was stolen while in the exclusive possession of and otherwise under the custody and control of Rex Trucking and/or Mason and Dixon. The trailer and bleachers never arrived in Chicago.

16.     As a result of the theft of the trailer and the loss of the bleachers, the Circus was delayed in setting up the circus and was forced to rent bleachers to carry out its performances in Chicago. The cost of renting replacement bleachers was $9,000.00.

17.     The rented bleachers, however, provided approximately 1/3rd fewer seats than the Circus' stolen bleachers. The Circus' bleachers had been specifically purchased based on the design of the tent. The Circus was unable to obtain larger or additional rented bleachers to compensate for the 1/3rd fewer seats because the rented bleachers did not conform to the size and shape of the tent.

18.     Based on the success of the show, the Circus extended its original tour dates in Chicago of August 29, 2001 through September 9, 2001, by one week, through September 16, 2001, for a total of twenty-six (26) performances. However, as a result of the fewer bleacher seats, the Circus suffered consequential damages of $6,000.00 per performance over twenty-six (26) performances for a total of $156,000.00.

19    At the conclusion of the Circus' performance in Chicago the bleachers had not been recovered and the Circus was preparing for the remainder of its 2001 National Tour. The Circus, therefore, was required to purchase new bleachers from Canobbio, the Circus' supplier for its tent and its bleachers, in Italy.

20.    On or about September 19, 2001 the Circus ordered new bleachers from Canobbio. The cost of the new bleachers was $92,740.00. The Circus also incurred shipping costs in the amount of $36,104.46 for shipping the bleachers from Italy to the United States. The Circus suffered damages in the amount of $128,844.46 for the purchase and shipment of the new bleachers.

21.    As a result of the loss of the bleachers, the Circus incurred damages totaling $293,844.46 for the cost of rented bleachers, the resulting loss of ticket sale revenues and the costs related to purchasing replacement bleachers.

22.    On February 19, 2002, the Circus through its attorneys, demanded payment of the $293,844.46 due and owing for the damages the Circus incurred as a result of Rex Trucking and/or Mason and Dixon's failure to transport and deliver the Circus' bleachers for its performances during its 2001 National Tour.

23.    Rex Trucking and/or Mason and Dixon have failed to make any payments despite demands by the Circus and its attorneys.

## FIRST CLAIM FOR RELIEF (COUNT I)
## CARMACK AMENDMENT

24.    Defendants violated the Carmack Amendment, 49 U.S.C. 14706(a)(1), by failing to deliver goods in good condition at the required place. Said bleachers were delivered in good condition to defendants in McAllen to be shipped to Chicago. The

Plaintiff's Second Amended Complaint Page 5

bleachers were not delivered as requested and Plaintiff was required to purchase replacement bleachers.

## SECOND CLAIM FOR RELIEF (COUNT II)
### BREACH OF AGREEMENT

25.    The Circus repeats and realleges each and every allegation contained in Paragraphs 1 through 24 with the same force and effect as if here set forth in full.

26.    Should the court find the Carmack Amendment inapplicable, Plaintiff alleges breach of contract. Rex Trucking and/or Mason and Dixon have refused and continue to refuse to pay the Circus for the cost of renting replacement bleachers in the amount $9,000.00 in accordance with the agreement between Rex Trucking and the Circus although the Circus has demanded payment.

27.    Rex Trucking and/or Mason and Dixon have refused and continue to refuse to pay the Circus for the loss of ticket sale revenues in the amount $156,000.00 in accordance with the agreement between Rex Trucking and the Circus although the Circus has demanded payment.

28.    Rex Trucking and/or Mason and Dixon have refused and continue to refuse to pay the Circus for the purchase and shipment of the new bleachers in the amount of $128,844.46 in accordance with the agreement between Rex Trucking and the Circus although the Circus has demanded payment.

29.    As a result of Rex Trucking's and/or Mason and Dixon's failure and refusal to pay the Circus these sums, $293,844.46 is due and owing by Rex Trucking and/or Mason and Dixon for damages as a result of the cost of rented bleachers, the

resulting loss of ticket sale revenues and the costs related to purchasing replacement bleachers, which constitutes a breach of the parties' agreement.

30.     Consequently, the Circus has been damaged in the amount of $293,844.46, with interest from February 19, 2002.

<u>JURY DEMAND</u>

31.     Plaintiff hereby demands to bring this action before a jury.

**WHEREFORE**, Plaintiff the Circus respectfully prays that the Court grant the follow relief:

A.     A prompt jury trial on the merits;

B.     Expedited discovery;

C.     Damages as allowed under 49 U.S.C. 14706 et seq.

C.     Findings of fact and conclusions of law that Rex Trucking and/or Mason and Dixon are liable for the actual and consequential damages the Circus suffered in the amount of $293,844.46, with interest from February 19, 2002;

D.     Compensatory damages for the Circus's significant losses incurred as a result of Rex Trucking and/or Mason and Dixon's failure to transport and deliver the Circus' bleachers for its performances during its 2001 National Tour in the amount of $293,844.46, with interest from February 19, 2002; and

E.     Costs, attorney's fees, interest, disbursements of this action, and such other and further relief as this Court may deem proper

Respectfully Submitted,

_____

Stephen J. Chapman
State Bar No. 24001870
Federal Bar No. 32677
Attorney In Charge
BARKER, LEON, FANCHER
& MATTHYS, L.L.P.
Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

## COUNSEL FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been served in accordance with the Texas Rules of Civil Procedure on this the   7th

day of   July , 2003, to all counsel of record as follows:

Mr. Michael Pita
Jeansonne & Remondet
Two Allen Center
1200 Smith Street, Suite 2265
Houston, Texas 77002

Patrick Sullivan
Hoover Slovaceck, LLP.
5847 San Felipe, Suite 2200
Houston, Texas 77057

_____
Stephen J. Chapman

# EXHIBIT B

1

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION


CIVIL ACTION NO. B-02-135

---

| | | |
|---|---|---|
| THE NATIONAL HISPANIC CIRCUS, INC., A NEW YORK NOT-FOR-PROFIT CORPORATION | ) ) ) ) | |
| Plaintiff | ) ) | DEPOSITION |
| VS. | ) ) | OF |
| REX TRUCKING, INC., A TEXAS CORPORATION, AND THE MASON AND DIXON LINES, INC., A MICHIGAN CORPORATION | ) ) ) ) ) | LEO BLUMENAUER |
| Defendants | ) ) | |



DEPOSITION taken before me, Brenda J. Brink, a Notary

Public within and for the State of Ohio, on the 4th Day of

November, 2003, pursuant to Notice and at the time and

place therein specified, to be used pursuant to the Rules

of Civil Procedure or by agreement of counsel in the

aforesaid cause of action, pending in the United States

District Court for the Southern District of Texas,

Brownsville Division.

3

STIPULATIONS

It is stipulated and agreed by and between counsel for the parties hereto that this deposition may be taken at this time, 1:30 p.m., November 4, 2003, in the offices of Nagy-Baker Court Reporting, Inc., 26 Market Street, Suite 810, Youngstown, Ohio.

It is further stipulated and agreed by and between counsel that the deposition may be taken in shorthand by Brenda J. Brink, a Notary Public within and for the State of Ohio, and may be by her transcribed with the use of computer-assisted transcription; that the witness will read and sign the finished transcript of his deposition.

4

1                            INDEX

2

3   CROSS EXAMINATION BY MR. CHAPMAN - PAGE 5

4   DIRECT EXAMINATION BY MR. PITA - PAGE 44

5

6

7   OBJECTIONS AND MOTIONS:

8   BY MR. PITA:  PAGE(S) 13, 14, 16, 17, 18, 19, 20, 22, 24,

9   25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39,

10  40, 42

11  BY MR. CHAPMAN:  PAGE(S) 24, 28

12

13

14  PLAINTIFF'S EXHIBITS INTRODUCED:

15  EXHIBIT 1 - PAGE 11              EXHIBIT 11 - PAGE 28

16  EXHIBIT 2 - PAGE 12              EXHIBIT 12 - PAGE 29

17  EXHIBIT 3 - PAGE 15              EXHIBIT 13 - PAGE 30

18  EXHIBIT 4 - PAGE 17              EXHIBIT 14 - PAGE 31

19  EXHIBIT 5 - PAGE 20              EXHIBIT 15 - PAGE 32

20  EXHIBIT 6 - PAGE 21              EXHIBIT 16 - PAGE 33

21  EXHIBIT 7 - PAGE 22              EXHIBIT 17 - PAGE 34

22  EXHIBIT 8 - PAGE 24              EXHIBIT 18 - PAGE 44

23  EXHIBIT 9 - PAGE 26              EXHIBIT 19 - PAGE 44

24  EXHIBIT 10 - PAGE 27

25

NAGY-BAKER COURT REPORTING, INC.
(330) 746-7479
1-800-964-3376

```
 1                    WHEREUPON,
 2                    LEO BLUMENAUER,
 3                    of lawful age, being by me first duly
 4                    sworn to testify the truth, the whole
 5                    truth, and nothing but the truth, as
 6                    hereinafter certified, deposes and
 7                    says as follows:
 8  CROSS EXAMINATION:
 9  BY MR. CHAPMAN:
10  Q                 Good afternoon, Mr. Blumenauer.  My name
11  is Steve Chapman.  I represent the National Hispanic
12  Circus in a case filed against the Mason and Dixon Lines.
13  Have you ever had your deposition taken before, sir?
14  A                 Yes.
15  Q                 Okay.  So you're aware of the process.
16  And I'll ask questions, and you'll give responses.  Your
17  attorney may object.  And unless he instructs you not to
18  answer, you can go ahead and answer.
19  A                 Correct.
20  Q                 In addition, for the court reporter's
21  sake, if you would answer out loud, not nod your head.
22  Because he's going to say -- she's going to type down nod
23  your head.  He's going to say it was left and right, and
24  I'm going to say it was up and down.  So just answer with
25  an affirmative response or negative response, however you
```

1                          THE WITNESS:  Thank you.

2                          MR. PITA:  Take a quick break?

3                          MR. CHAPMAN:  Okay.

4          (Discussion off the record)

5    DIRECT EXAMINATION:

6    BY MR. PITA:

7    Q                Mr. Blumenauer, I'm going to show you

8    what was marked -- what was previously marked as Exhibit

9    16 and 17, and I'm also going to show you what I've marked

10   as Exhibit 18.  Collectively, what do those documents

11   refer to; do you know?

12   A                These would refer to the freight charges

13   for the shipments moved by Rex Trucking.

14   Q                Okay.  Do you know, offhand, what the

15   amount of those freight shipments was?

16   A                Shade over $18,000, I believe.

17   Q                Okay.  Have you ever heard of a company

18   called US Trailer Movers?

19   A                Yes.

20   Q                Who is US Trailer Movers?

21   A                That -- now that you say it is -- that's

22   a company -- that's the company Curtis Spiva owns.

23   Q                Okay.  I'm going to show you a document

24   that I'm going to mark as Exhibit 19.

25          (Whereupon Plaintiff's Exhibit 19 was marked.)

1  Q              Have you ever seen that document before?

2  A              Yes.

3  Q              What is that document?

4  A              That's a check from National Hispanic

5  Circus to US Trailer Movers for $18,485.

6  Q              Do you know what that check was for?

7  A              It was for payment of the freight

8  charges for moving the shipments.

9  Q              They shipped the circus to Chicago?

10 A              To Chicago; correct.

11 Q              Why was the check made out to US

12 Trailers?

13 A              Don't really know.  It should have been

14 made out to Rex Trucking.  Don't know.

15 Q              Do you know if payment was ever made on

16 that check?

17 A              Stop payment was made on this check.

18                    MR. PITA:  That's all I have.

19                    MR. CHAPMAN:  Off the record just

20 for one second.

21      (Discussion off the record)

22                    MR. CHAPMAN:  Nothing further for

23 me, sir.  I appreciate your time.  I believe we were going

24 to agree that if an unsigned copy or if we need to use an

25 unsigned copy, if the original is not available, we can do

# REX TRUCKING, INC.

505 N. Belt East, Suite 530
Houston, Tx. 77060
(281) 260-8600
(281) 260-8612 fax

26192

Pick Up Date: _____
Shipper: CiRCO MUNDiAL
Address: HARLINGEN, TX
City/State: Cracker seal (damage)
Signature: _____
(SHIPPED IN GOOD CONDITION) DATE: 8-27-01

**Bill of Lading**

Load # 13-D90-003
Trk # 1357   Trl # _____
Driver Ed McSpadden
Tarp Required:  Yes _____ No ✓

Delivery Date: _____
Consignee: CiRCO MUNDiAL
Address: 4100 S. ASHLAND
City/State: CHICAGO, IL
Signature: _____
(RECEIVED IN GOOD CONDITION) DATE: 8-29-01

Loading Time In _____ Out _____     Unloading Time In _____ Out _____

**Claims for damage and / or shortages must be filed within 30 days of shipment and must be noted on the bill of lading or the claim will not be allowed. Shipper is responsible unless otherwise noted. Payment is due net 15 terms.**

| Pieces | Description Of Work Performed | Miles | Weight |
|--------|------------------------------|-------|--------|
| 1 | '95 Used Great Dane Trailer - 45ft, LIC #43744-A | PUERTO RICO | |
| | VIN # 1GRAA9025SB103001 | | |
| | UNIT # NHC 51146      FP. Damage to Left Top of Trailer (HOLE) | | |

**Received in Apparent Good Order, Except as Noted Above. All Hazardous Material Shipments must have this certification signed by the shipper or their representative: This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.**

**Bill to:** _____
**Address:** _____
**City/State:** _____
**Phone:** _____
**Cust ref #:** _____

Line haul: 2600
Stopoff: _____
Tarping: _____
Permits: _____
Other: _____
**Invoice Total:** _____

Beginning Odometer Reading: _____ Ending Odometer: _____

| State | Gal. Fuel Purchased | Route(s) | Loaded Miles | Empty Miles |
|-------|--------------------|---------|--------------|-------------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Driver Signature: _____     Total Miles: _____
All Logs Must Be Attached

PLAINTIFF'S
EXHIBIT
10
11/4/03

# REX TRUCKING, INC

Bill of Lading

505 N. Belt East, Suite 530
Houston, Tx. 77060
(281) 260-8600
(281) 260-8612 fax

26161

Load # 13-040-001
Trk # 1315   Trl # _____
Driver JOHN D. CUSTER

Tarp Required:   Yes _____   No _____

Pick Up Date: _____
Shipper: CIRCUS LOT
Address: _____
City/State: HARLINGON
Signature: _____
(SHIPPED IN GOOD CONDITION) DATE:

Delivery Date: 8-29-07
Consignee: CIRCUS LOT
Address: _____
City/State: CHICAGO IL
Signature: _____
(RECEIVED IN GOOD CONDITION) DATE:

Loading Time In _____ Out _____

Unloading Time In _____ Out _____

Claims for damage and / or shortages must be filed within 30 days of shipment and must be noted on the bill of lading or the claim will not be allowed.
Shipper is responsible unless otherwise noted. Payment is due net 15 terms.

| Pieces | Description Of Work Performed | Miles | Weight |
|--------|-------------------------------|-------|--------|
| 1 | DROP DECK TRAILER | | |
| | | | |
| | | | |

Received in Apparent Good Order, Except as Noted Above. All Hazardous Material Shipments must have this certification signed by the shipper or their representative: This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

Bill to: _____
Address: _____
City/State: _____
Phone: _____
Cust ref #: _____

Line haul: 2600
Stopoff: _____
Tarping: _____
Permits: _____
Other: _____
**Invoice Total:** _____

Beginning Odometer Reading: _____   Ending Odometer: _____

| State | Gal. Fuel Purchased | Route(s) | Loaded Miles | Empty Miles |
|-------|---------------------|----------|--------------|-------------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Driver Signature: _____   Total Miles: _____

All Logs Must Be Attached

White & Green = Corp. Office        Gold = Driver        Pink = Shipper

NHC v. Rex Trucking, et al

**PLAINTIFF'S EXHIBIT**
11

# REX TRUCKING, INC

605 N. Belt East, Suite 530
Houston, TX 77060
(281) 260-8600
(281) 260-8612 fax

Load # 8-090-00R
Trl # 1180
Driver: Fred Freeman
Tarp Required:  Yes    No

Pick Up Date: 8-27-01
Shipper: Mexican Circus
Address:
City/State: Harlingen, TX
Signature:
(SHIPPED IN GOOD CONDITION) DATE:

Delivery Date: 8-27-01
Consignee: Mexican Circus
Address:
City/State: Chicago, IL
Signature:
(RECEIVED IN GOOD CONDITION) DATE:

Loading Time In _____ Out _____    Unloading Time In _____ Out _____

Claims for damage and / or shortages must be filed within 30 days of shipment and must be noted on the bill of lading or the claim will not be allowed. Shipper is responsible unless otherwise noted. Payment is due net 15 terms.

| Pieces | Description Of Work Performed | Miles | Weight |
|---|---|---|---|
| 1 | Loaded Trailer | | |
| | | 2 | |

Received in Apparent Good Order, Except as Noted Above. All Hazardous Material Shipments must have this certification signed by the shipper or their representative: This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

**Bill to:**
**Address:**
**City/State:**
**Phone:**
**Cust ref #:**

Line haul: 2600
Stopoff:
Tarping:
Permits:
Other:
**Invoice Total:**

Beginning Odometer Reading: _____    Ending Odometer: _____

| State | Gal. Fuel Purchased | Route(s) | Loaded Miles | Empty Miles |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Driver Signature: Fred Freeman    Total Miles: _____
All Logs Must Be Attached

White & Green = Corp. Office    Gold = Driver    Pink = Shipper

PLAINTIFF'S EXHIBIT
12
11/4/03

# REX TRUCKING, INC

**Bill of Lading**

505 N. Belt East, Suite 530
Houston, Tx. 77060
(281) 260-8600
(281) 260-8612 fax

*(26199)*

Load # 12-090-005
Trk # 1365   Trl # _____
Driver _Lee Padin_

Tarp Required:   Yes _____   No _____

Pick Up Date: _8-27-01_
Shipper: _Mexican Circus_
Address: _____
City/State: _Harlingen, TX_
Signature: _____
(SHIPPED IN GOOD CONDITION) DATE:

Delivery Date: _8-29-01_
Consignee: _Mexican Circus_
Address: _____
City/State: _Chicago, IL_
Signature: _____
(RECEIVED IN GOOD CONDITION) DATE:

Loading Time In _____ Out _____          Unloading Time In _____ Out _____

**Claims for damage and / or shortages must be filed within 30 days of shipment and must be noted on the bill of lading or the claim will not be allowed. Shipper is responsible unless otherwise noted. Payment is due net 15 terms.**

| Pieces | Description Of Work Performed | Miles | Weight |
|--------|-------------------------------|-------|--------|
| 1 | Loaded trailer | | |
| | | | |
| | | | |

Received in Apparent Good Order, Except as Noted Above. All Hazardous Material Shipments must have this certification signed by the shipper or their representative: This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

**Bill to:** _____
**Address:** _____
**City/State:** _____
**Phone:** _____
**Cust ref #:** _____

Line haul: _2600_
Stopoff: _____
Tarping: _____
Permits: _Fine: 285.00   100% to trk_
Other: _____
**Invoice Total:** _____

Beginning Odometer Reading: _____          Ending Odometer: _____

| State | Gal. Fuel Purchased | Route(s) | Loaded Miles | Empty Miles |
|-------|---------------------|----------|--------------|-------------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Driver Signature: _____          Total Miles: _____
**All Logs Must Be Attached**

White & Green = Corp. Office          Gold = Driver          Pink = Shipper

NHC v. Rex Trucking, et al
Initial Disclosures
38

PLAINTIFF'S
EXHIBIT
13

# REX TRUCKING, I

Belt East, Suite 530
Houston, Tx. 77060
(281) 260-8600
(281) 260-8612 fax

26198

**Bill of Lading**   2-090-004

Load # 01363
Trk # 1363 Trl # 0/A
Driver _Meslu Fulan_
Tarp Required:  Yes ___ No ✓

Pick Up Date: 8/27/2001
Shipper: _Hi Gytima Hygienic Climer_
Address: _____
City/State: _Harlingen, TX_
Signature: _____
(SHIPPED IN GOOD CONDITION) DATE:

Delivery Date: 8/29/2001
Consignee: _Hi Gytima Hygienic_
Address: _Ashland_
City/State: _Chicago IL_
Signature: _956-291-5681_
(RECEIVED IN GOOD CONDITION) DATE:

Loading Time In _____ Out _____          Unloading Time In _____ Out _____

---

Claims for damage and / or shortages must be filed within 30 days of shipment and must be noted on the bill of lading or the claim will not be allowed. Shipper is responsible unless otherwise noted. Payment is due net 15 terms.

| Pieces | Description Of Work Performed | Miles | Weight |
|--------|-------------------------------|-------|--------|
| 1 | _Loaded Step deck w/self contained generator_ | | |
| | | | |
| | | | |

Received in Apparent Good Order, Except as Noted Above. All Hazardous Material Shipments must have this certification signed by the shipper or their representative: This is to certify that the above named materials are properly classified, described, packaged, marked an labeled, and are in proper condition for transport according to the applicable regulations of the Department of Transportation.

**Bill to:** _____
**Address:** _____
**City/State:** _____
**Phone:** _____
**Cust ref #:** _____

Line haul: _2600²_
Stopoff: _____
Tarping: _____
Permits: _____
Other: _____
**Invoice Total:** _____

Beginning Odometer Reading: _____   Ending Odometer: _____

| State | Gal. Fuel Purchased | Route(s) | Loaded Miles | Empty Miles |
|-------|---------------------|----------|--------------|-------------|
| TX | 143.937 | | | |
| MO | 66.37 | | | |
| TX | 243.45 | | | |
| | | | | |
| | | | | |

Driver Signature _Meslu Fulan_   Total Miles: _____

**All Logs Must Be Attached**

White & Green = Corp. Office          Gold = Driver          Pink = Shipper

NHC v. Rex Trucking, et al
Initial Disclosures

PLAINTIFF'S
EXHIBIT
14

# EXHIBIT C

IN THE UNITED STATES DISTRICT C
FOR THE SOUTHERN DISTRICT OF
BROWNSVILLE DIVISION



| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC. A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTI |
| | § | |

REX TRUCKING, INC., A TEXAS
CORPORATION                             §
    Defendant                          §
                                       §
AND                                    §
                                       §
THE MASON AND DIXON, LINES,            §        JURY DEMANDED
INC. A MICHIGAN CORPORATION            §
    Defendant/Counter-Plaintiff        §
                                       §
V.                                     §
                                       §
THE NATIONAL HISPANIC CIRCUS,          §
A NEW YORK NOT-FOR-PROFIT              §
CORPORATION                            §
    Counter-Defendant.                 §

## JOINT PRETRIAL ORDER

Pursuant to Local Rule 16.2 and Rule 16 of the Federal Rules of Civil Procedure

the parties submit the following Joint Pretrial Order:

1.    COUNSEL FOR THE PARTIES

Plaintiff:              Stephen J. Chapman
                        (Bar No. 240 018 70)
                        Federal Bar No. 32677
                        BARKER, LEON, FANCHER
                        & MATTHYS, L.L.P.

JOINT PRETRIAL ORDER - Page 1

Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

Defendant: Mr. Michael Pita
State Bar No. 24001870
Federal Bar No. 32169
Michael Remondet
Jeansonne & Remondet
1200 Smith, Suite 2220
Houston, Texas 77002
(713)752-0300 Phone
(713)752-0410 Fax

2. STATEMENT OF THE CASE[1]

Plaintiff -

On or about August 27, 2001 the Circus hired Rex Trucking, Inc., a division of

Louisiana Transportation, Inc. to provide drivers and trucks to transport from Harlingen,

Texas to Chicago, Illinois, seven (7) Circus trailers, including two trucks carrying the set of

bleachers.

  The truck transporting the Circus' trailer containing half of the full set of

bleachers was missing and the trailer and bleachers never arrived in Chicago. The Circus' trailers

and their respective loads were placed under Rex Trucking's sole and exclusive custody, care,

supervision, direction and control. Rex Trucking had exclusive control over its drivers and its

---

[1] / In fact Mason and Dixon has filed a motion for summary judgment to dismiss Rex Trucking because Mason and Dixon purchased Rex Trucking prior to the actions giving rise to this lawsuit and the loss, if any, is borne by Mason and Dixon. Counsel for Rex Trucking, Patrick Sullivan, will not be appearing for trial or any other matters before the court.

trucks, in addition to the means, methods, and details of delivering the trailers to the Circus in Chicago.

The bleachers are specially made to fit the circus tent by a company in Italy, Cannobio. The Circus rented temporary replacement bleachers for the missing half and was assured by Defendant that they would pay for the rental bleachers while the truck was being located. The cost of renting replacement bleachers was $9,000.00. Defendant never paid for the rental.

After close to a month with no word or contact on where the missing bleachers were or when they would be recovered, plaintiff was forced to special order another set of bleachers to replace the missing ones in order to avoid canceling further shows on the schedule. On or about September 19, 2001 the Circus ordered new bleachers from Canobbio. The cost of attaining the new bleachers was $128,844.46 for the purchase and shipment of the new bleachers.

Defendants bills of lading provided no information concerning any tariffs and did not provide for spaces allowing adjustment of liability of the shipper or carrier as is required under the Carmack Amendment or otherwise meet the requirements of a bill of lading sufficient to invoke tariff protection.

Only months after the circus was forced to order the new bleachers was the trailer containing the old bleachers discovered in Arkansas and picked up by a wrecker service. To plaintiffs knowledge the driver has not been located.

Defendant –

Without admitting liability, Defendant did everything possible to locate the missing cargo and kept Plaintiff fully informed as to its progress. Despite the fact that Plaintiff cancelled

shows for reasons unrelated to the temporary loss of the bleachers and only three (3) weeks into Defendant's investigation of the missing bleachers, Plaintiff, without notifying Defendant, ordered replacement bleachers, even though Plaintiff did not have shows scheduled until November 21, 2001. On that date, Plaintiff learned that the bleachers had been recovered. Despite this, Plaintiff confirmed its order to Connobio.

Additionally, Defendant's tariff limits Plaintiff's recovery to ten cents per pound.

Additionally, Plaintiff failed to pay Defendant $18,485.00 for the complete shipment of the load to Chicago. Defendant has asserted a counter-claim for said amount.

### 3.   JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. $1332.  The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.  This court has jurisdiction under 49 U.S.C. 14706(a)(1) to decide this dispute between a carrier and shipper.

This Court has personal jurisdiction over the Defendants because the Defendants entered the contract and provided shipping services to the Plaintiff in the State of Texas.

Venue is proper in this District under 28 U.S.C. $1391(c) because a substantial part of the events and transactions giving rise to the claim occurred in this District.

### 4.   MOTIONS

Defendant Mason and Dixon Lines has two motions for summary judgment pending.

### 5.   CONTENTIONS OF THE PARTIES.

<u>Plaintiff</u>

Defendant failed to deliver the bleachers to the Chicago show.  Defendant did not discover the bleachers until months after they went missing.   In order to continue its show schedule the Circus had to pay up front for special order bleachers from Italy.  This money was paid before the missing bleachers were located months later.  Defendant also agreed to pay for temporary rental bleachers but did not do so.

Under the Carmack Amendment, Mason and Dixon Lines is responsible for the replacement cost of the bleachers.  Mason And Dixon Lines' bills of lading were not sufficient to invoke any claimed tariff protection under the Carmack Amendment.   In addition, Mason and Dixon breached its agreement to pay for replacement bleachers.  Should the Carmack Amendment not apply the Circus is also entitled to all breach of contract damages and consequential damages from the actions of Mason and Dixon.

<u>Defendant</u>

Without admitting liability on the part of Defendant, Defendant asserts that Plaintiff failed to mitigate its damages. Specifically, Plaintiff did not allow Defendant to adequately investigate the loss of the bleachers and ordered replacement bleachers prematurely. Plaintiff admits that the bleachers were recovered on or about November 21, 2001. Interestingly, November 21, 2001 is the next date that the show performed after its performances in Chicago.

Additionally, Defendant learned from Plaintiff that former employees of the circus threatened the circus and may have had a role in the disappearance of the bleachers. Despite the fact that Plaintiff may have known of the threats, Plaintiff failed to warn Defendant.

After less than two (2) months, the original bleachers were found and returned to Plaintiff. It is Defendant's understanding that the same company in Italy manufactured the "new" bleachers

and the original bleachers and is of substantially the same design. Therefore, Defendant is entitled to an offset for the original bleachers if damages are awarded to Plaintiff.

The Carmack Amendment provides the sole remedies for Plaintiff. The Carmack Amendment preempts plaintiff's state and common law claims. Plaintiff is not entitled to damages, if any, based on a breach of contract cause of action.

6.    UNCONTESTED FACTS

1.    On August 27, 2001 the Circus and Mason and Dixon Lines entered into an agreement pursuant to which Mason and Dixon Lines was to provide drivers and trucks to transport seven (7) Circus trailers from Harlingen, Texas to Chicago, Illinois.

2.    The trailer and bleachers did not arrive in Chicago.

3.    The Circus rented bleachers to carry out its performances in Chicago.

4.    Mason and Dixon agreed to pay the circus for rental bleachers.

5.    Mason and Dixon did not pay for the rental of bleachers.

6.    On September 19, 2001 the Circus ordered new bleachers from Canobbio.

7.    The original bleachers were later found and returned to Plaintiff.

7.    CONTESTED ISSUES OF FACT

Plaintiff -

1.    Whether the Circus is entitled to the cost of ordering replacement bleachers.

2.    Whether the Circus is entitled to recover the rental charges for temporary bleachers.

JOINT PRETRIAL ORDER - Page 6

3.    Whether the recovered bleachers have any mitigating value.


Defendant –

1.    Whether Plaintiff is entitled to the cost of replacement bleachers.

2.    The cost of the replacement bleachers.

3.    Whether the circus is entitled to the cost of rental bleachers.

4.    The cost of rental bleachers.

5.    Whether the action of the circus or any of its agents had something to do with the loss of the bleachers.

6.    Whether the circus adequately mitigated its damages.

8.    AGREED PROPOSITIONS OF LAW

None.

9.    CONTESTED PROPOSITIONS OF LAW

1.    Whether the liability of Mason and Dixon is limited by their tariff.

2.    Whether the bills of lading were legally sufficient to limit damages under the Carmack Amendment.

3.    Whether the Circus is entitled to recover its damages, if any, under the Carmack Amendment.

4.    Whether Defendant is entitled to recover for the non-payment of the freight charges by Plaintiff.

10.    EXHIBITS

See attached Exhibit List.


JOINT PRETRIAL ORDER - Page 7

11.    WITNESSES

See attached Witness List.


12.    SETTLEMENT

The parties are still engaged in settlement talks but are preparing for trial.

13.    TRIAL

1.    Plaintiff-

A.    Estimate 3-4 days

B.    There may be some difficulty with presenting live testimony of some witnesses as several are in Puerto Rico and Ohio.

2.    Defendant – Estimate 3-4 days.


14.    ATTACHMENTS

See attached charge.

Approved as to form and substance

_Stephen J. Chapman_ w/ permission (MAP)

Stephen J. Chapman
State Bar No. 24001870
Federal Bar No. 32677
**Attorney In Charge**
BARKER, LEON, FANCHER
& MATTHYS, L.L.P.
Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437
COUNSEL FOR PLAINTIFF
NATIONAL HISPANIC CIRCUS

_Michael A. Pita_

Michael A. Pita
ATTORNEY-IN-CHARGE
State Bar No. 24034628
Federal Bar No. 32169
Jeansonne & Remondet
1200 Smith Street, Suite 2220
Houston, Texas 77002
Telephone: (713) 752-0300
Telecopier: (713) 752-0410
COUNSEL FOR MASON AND DIXON LINES,
INC.

JOINT PRETRIAL ORDER - Page 9

This Joint Pre-Trial Order is hereby approved this the ___ day of _____, 2003.

<br>

_____
United States District Judge

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


THE NATIONAL HISPANIC CIRCUS, INC.,        *
A New York Not-For-Profit                  *
Corporation,                               *
                  Plaintiff,        *
                                *
                vs.            * CIVIL NO. B-02-135
                                *
REX TRUCKING, INC., A Texas                *
Corporation, and THE MASON AND DIXON       *
LINES, INC., A Michigan Corporation.       *
                Defendants.      *
-------------------------------------- *


The deposition of:

                  EDWIN RIVERA,

a non-party witness, was held at the offices of

SALDAÑA & CARVAJAL, ESQS., Vig Building, 1225 Ponce De Leon

Avenue, Santurce, Puerto Rico, on Thursday, October 23,

2003, at 10:15 a.m.



               BARBARA DACHMAN, CSR, RPR
            U.S. OFFICIAL COURT REPORTER
                 787-722-0132

APPEARANCES:

COUNSEL FOR PLAINTIFF

BARKER, LEON, FANCHER & MATTHYS, L.L.P.
Tower II, Suite 1200
555 N. Carancahua
Corpus Christi, Texas  78478
BY:  STEPHEN J. CHAPMAN,  ESQ.

DAVIDOFF & MALITO, L.L.P.
605 Third Avenue
New York, New York  10158
BY:  RICARDO E. OQUENDO, ESQ.
       (Corporate Counsel)

COUNSEL FOR DEFENDANTS

JEANSONNE & REMONDET, L.L.P.
Two Allen Center
1200 Smith Street, Suite 2265
Houston, Texas  77002
BY:  Michael Pita,  ESQ.

NOTARY PUBLIC

FRANCES COLON RIVERA, ESQ.

CERTIFIED INTERPRETER

EDIE NUÑEZ

COURT REPORTER

BARBARA DACHMAN, CSR, RPR, USOCR

**Edwin Rivera - Exam By Mr. Pita**

(The reporter, interpreter and deponent are duly sworn by the notary public.)

**MS. COLON:** And I am excused, right?

**MR. PITA:** Thank you.

**MR. OQUENDO:** Thank you very much.

Whereupon,

EDWIN RIVERA,

After first having been duly sworn by the notary public, was examined and, through the interpreter, deposed as follows:

EXAMINATION

BY MR. PITA:

Q. Mr. Rivera, my name is Michael Pita, and I represent The Mason and Dixon Lines in this lawsuit. And I know I briefly met you. I just wanted to introduce myself for the record.

Before we start with the deposition, I need to make a few agreements with your lawyer, okay?

**MR. PITA:** Steve, we can take this deposition pursuant to the Federal Rules of Procedure; however, we are going to reserve all objections to the time of trial, except as to form.

**MR. CHAPMAN:** Right, and I will just say, "Objection to form," and you can ask me the basis.

**MR. PITA:** Is Mr. Rivera going to read and sign?

Edwin Rivera - Exam By Mr. Pita

1    document is?

2        A.    Well, that's the schedule of the circus

3    visits at those locations.

4        Q.    Do you know when that schedule was made?

5        A.    No.  No, I don't remember.

6        Q.    Except for the Chicago show, does that

7    schedule accurately reflect the shows that were performed by

8    the National Hispanic Circus during the 2001 season?

9        A.    No, I see there that there were changes.

10   There were changes made to it.

11       Q.    Are the changes reflected on that document?

12       A.    No.

13       Q.    I am going to hand you -- I am going to hand

14   you a black pen.  With that pen, could you mark on that

15   document the changes that were made to the 2001 season, to

16   the best of your recollection.

17            Actually, let's do it this way:  Use my blue pen,

18   and I will use the black pen.

19       A.    Well, everything that I have circled was

20   eliminated, and we only did Miami.

21       Q.    Did you --

22       A.    To the best of my recollection, this was on

23   this date, in Miami.

24       Q.    Okay.  Thank you.

25            There is some writing on the bottom of this

Edwin Rivera - Exam By Mr. Pita

Q.    To your knowledge, The National Hispanic ircus did not manufacture the bleachers that were lost, did hey?

A.    That's correct.

Q.    Do you know how old the bleachers were that were lost?

A.    About a year.

Q.    Do you have any knowledge as to how much the bleachers weighed?

A.    No.

Q.    Do you have any knowledge as to how much the trailer and all its contents -- the trailer that was lost and all its contents weighed?

A.    No, negative.

Q.    Do you know if the trailer was ever found?

A.    Yes, it was found.

Q.    To your knowledge, when was the trailer found?

A.    I was informed, if my memory serves me correctly, in November.

Q.    Were you informed -- to your knowledge, were you informed in the beginning, middle, or latter part of November?

A.    It was about mid-November, if my memory serves me correctly.

40

### Edwin Rivera - Exam By Mr. Chapman

I thank you very much for your time.

       **MR. CHAPMAN:**  I have a few questions for you,
Mr. Rivera, just to clarify some things and in case you are
not available to testify at trial, so that we cover some
areas.

      ~~(To the interpreter)~~ And you can translate that.

      (Whereupon, the interpreter translates to the
      deponent.)

              EXAMINATION

BY MR. CHAPMAN:

      **Q.**  Now, just to clarify something that was
testified earlier.

      As far as the invoice exhibits -- I believe it's
either 2 or 3 through 5 -- you have no personal knowledge of
those exhibits, do you, sir?

      **A.**  That's correct.

      **Q.**  Now, you also mentioned earlier that the
Chicago shows were all sold out.  Did you actually have to
turn people away from the shows?

      **A.**  In each show we turned about 300 people away,
average.

      **Q.**  If you would have had the bleachers, would
you have been able to seat those individuals?

      **MR. PITA:**  Objection.  Form.

      **THE DEPONENT:**  Yes, positively.

DEPOSITION
EXHIBIT
1

42

**Edwin Rivera - Exam By Mr. Chapman**

accommodate those people.

BY MR. CHAPMAN:

      Q.   Do you recall when you first suggested that
the circus needed to order bleachers from Canobbio?

      A.   No, that's the management who made the
decision on their own.

      Q.   Do you recall whether the bleachers were
ordered during the Chicago show?

      A.   Yes.  Yes.

      Q.   Do you understand anything about how the
construction of the bleachers takes place at Canobbio?

      A.   Well, as we were explained the first time we
received the bleachers, they explained to us the way that
they manufacture them and how we had to instruct to set them
up.

      Q.   Are these bleachers special made to fit your
tent?

           MR. PITA:  Objection.  Form.

           THE DEPONENT:  That's correct.

BY MR. CHAPMAN:

      Q.   When you ordered replacement bleachers, did
they have replacement bleachers in storage that they could
just provide you, or did they have to manufacture them?

           MR. PITA:  Objection.

           THE DEPONENT:  No, negative.  They had to

Edwin Rivera - Exam By Mr. Chapman

1    order them.  They said that they had to stop and make them

2    to our measurements.

3    BY MR. CHAPMAN:

4         Q.   Do you know if the circus had to pay in

5    advance in order to get these replacement bleachers?

6         A.   Yes, that's what the management told me, that

7    they had to pay in advance, plus the premium.  In other

8    words, an extra advance because it was a new order.

9              THE INTERPRETER:  Excuse me.

10             "Because it was a quick order, a special order."

11             THE DEPONENT:  (In English) Rush order.

12   BY MR. CHAPMAN:

13        Q.   Do you recall how the bleachers were

14   delivered to the circus?

15        A.   (In Spanish) I heard the management say they

16   had to bring them in by plane.

17        Q.   Did the circus have to pay for that, or was

18   that done by Canobbio?

19             MR. PITA:  Objection.  Form.

20             THE DEPONENT:  The management told me they

21   had to pay it all.

22   BY MR. CHAPMAN:

23        Q.   Now, in addition to 9/11, which you've talked

24   about, did the absence of the bleachers cause any problems

25   with opening up the shows after Chicago?

# THE NATIONAL HISPANIC CIRCUS, INC.
## TRIX *CIRCO MUNDIAL*

## OUR YEAR 2001 SEASON

1.  Los Angeles ......... April 27 – May 10 ...... San Fernando Swap Meet,
    S.Fernando, CA.

2.  Tuscon, AZ .......... May 11 – 20 .......... Southgate Shopping Center

3.  Phoenix ............. May 25 – June 3[2] ...... Metrocenter Mall      *10 days*

4.  El Paso ............. June 8 – 17[3] .......... Coliseum Parking Lot   *10 days*

5.  San Antonio ......... June 22 – July 1 ........ Windsor Park Mall[4]   *10 days*

6.  Houston ............. July 6 – 15 ............ t/b/d                 *10 days*

7.  Dallas .............. July 20 – 29 ........... t/b/d                 *10 days*

8.  Corpus Christi ...... August 3 – 12 .......... Fair Park (?)         *10 days*

9.  McAllen-Harlingen ... August 17 – 26 ........ Bella Vista Mall       *10 days*

10. Chicago ............. August 31 – Sept. 9[5] ... Cicero & 31st St. (Cicero)  *10 days*

11. New York #1 ....... Sept. 14 – 23[6] .......... t/b/d[7]             *10 days*

12. New York #2 ....... Sept. 26 – Oct. 8[8] ...... t/b/d               *13 days*

13. New York #3 ....... Oct. 12 – 21 ........... t/b/d                 *10 days*

14. New York #4 ....... Oct. 26 – Nov. 4 ....... t/b/d                 *10 days*

15. Philadelphia ....... Nov. 9 – 18 ............ t/b/d[9]             *10 days*

16. Miami .............. Nov. 21 – Dec. 2[10] ...... Bicentannial Park    *12 days*

*145 days this schedule*
*or × 170.⁰⁰ = $24,650.⁰⁰*
*for financing CGL*
*(#1mm) $3700.⁰⁰*
*(#3mm) $4700.⁰⁰*
*×5*
*×5*
*5/9/01*

DEPOSITION
EXHIBIT

# EXHIBIT E

0131855142              NOBIO                        HAW3    MIL27106592
125 MIL  8815 5406                                          ·11.2001  14:11·47  01/31

Shipper's Account Number          Not Negotiable
                                  Air Waybill        KUEHNE & NAGEL S.P.A.
CANOBBIO SPA                      Issued by          LARGO FRATELLI CERVI
VIA ROMA, 3                                          I-20090 VIMODRONE
IT-15053 CASTELNUOVO SCRIVIA

                                  Copies 1, 2 and 3 of this Air Waybill are originals and have the same validity

Consignee's Name and Address
THE NATIONAL HISPANIC            Account Number
2586 LANE AVENUE NORTH
JACKSONVILLE  FLORIDA 32254  USA                     KN

                                                     KUEHNE & NAGEL

Issuing Carrier's Agent Name and City      Accounting Information
KUEHNE & NAGEL S.P.A.            SHPRS REF :404
LARGO FRATELLI CERVI            2710-3211-111.015
I-20090 VIMODRONE

Agents IATA Code       Account No.

Airport of Departure (Addr. of First Carrier) and Requested Routing   NON VALE FATTURI, AI FINI IVA
MILAN                                                  03353320157                            X

To | By First Carrier | Routing and Destination | to | By | to | By | Currency | CHGS CODE | WT/VAL | Other | Declared Value for Carriage | Declared Value for Customs
ATL | AZ3693/01 | | | | | | USD | | C | X | | NVD | | NCV

Airport of Destination        Amount of Insurance   INSURANCE - If Carrier offers insurance, and such insurance is
ATLANTA  GA                    XXX                   requested in accordance with conditions on reverse hereof, indicate
                                                     amount to be insured in figures in box marked 'Amount of Insurance'

Handling Information
ATTACHED: SET OF DOCUMENTS  COMMERCIAL INVOICE
PLS CONTACT IMMEDIATLY MR ROBERTO SOTO PHONE  904 607 2199
OR MR ERNESTO VILANOVA PH 787 769 8100                                    SCI
                                                                          C

| No. of Pieces RCP | Gross Weight | kg lb | Rate Class / Commodity Item No. | Chargeable Weight | Rate / Charge | Total | Nature and Quantity of Goods (Incl. Dimensions or Volume) |
|---|---|---|---|---|---|---|---|
| 18 | 18129,0 | K Q | | 18129,0 | 1,40 | 25380,6 | STEPS FOR CIRCUS EX WORKS |
| | | | | | | | |
| | | | | | | | VOL: 71.565 CBM. |
| 18 | 18129,0 | | | | | 25380,6 | |

| Prepaid | Weight Charge | Collect | Other Charges |
|---|---|---|---|
| | 25380,60 | | PUA 1176,00  INA  503,00  TXC  3081,00 |
| Valuation Charge | | | SCC 2538,06  NYC  1812,90 |
| Tax | | | |
| Total Other Charges Due Agent | | Shipper certifies that the particulars on the face hereof are correct and that insofar as any part of the consignment | |
| | 1479,00 | | contains dangerous goods, such part is properly described by name and is in proper condition for carriage by |
| Total Other Charges Due Carrier | | | air according to the applicable Dangerous Goods Regulations. |
| | 7431,96 | | KUEHNE & NAGEL S.P.A. |
| | | | EUGENIA ZERBINI |
| | | | Signature of Shipper or his Agent |
| Total Prepaid | | Total Collect | |
| | | 34291,56 | 28/NOV/2001  MILANO          KUEHNE & NAGEL S.P.A. |
| Currency Conversion Rates | CC Charges in Dest. Currency | Executed on  (Date)  at  (Place)  Signature of Issuing Carrier or its Agent |
| For Carrier's Use only at Destination | Charges at Destination | Total Collect Charges |

                                                           MIL27106592

Kuehne & Nagel SpA         Tel:  +39 02 95 07 41        Deutsche Bank sc. E        KUEHNE & NAGEL S.p.A.
Largo F.lli Cervi          Fax:  +39 02 25 07 43 54     Via Filangieri 3 Milano
I-20090 Vimodrone (MI)     Email  knml.xx@kuehne-nagel.com    ABI 03104, CAB 01603
Italy                      Internet www.kuehne-nagel.com       Aoc. No. 446.360.071
                                                       Partita IVA  IT 036 560 00. 62

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

THE NATIONAL HISPANIC          )
CIRCUS, INC., A New York       )
not-for-profit Corporation,    )
                               )
                Plaintiff,     )
                               )
vs.                            )              CIVIL ACTION No.  B-02-135
                               )
REX TRUCKING, INC., a Texas    )
Corporation, and THE MASON AND )
DIXON LINES, INC., a Michigan  )
Corporation                    )
                               )
                Defendants.    )

## PLAINTIFF'S RESPONSES TO DEFENDANT THE MASON AND DIXON LINES, INC.'S FIRST SET OF INTERROGATORIES

COMES NOW, THE NATIONAL HISPANIC CIRCUS, INC., Plaintiff in the above-entitled

and numbered cause and files these his Responses to Defendant The Mason and Dixon Lines, Inc.'s

First Set Of Interrogatories herein and pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

BARKER, LEON, FANCHER
& MATTHYS, L.L.P.
Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

Stephen J. Chapman
State Bar No. 24001870
Attorneys for Plaintiff
National Hispanic Circus, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure on this the __20th_ day of __August_, 2003, to all counsel of record as follows:

Mr. Patrick Sullivan
HOOVER SLOVACEK, L.L.P.
5847 San Felipe, Suite 2200
Houston, Texas 77057

Mr. Michael Pita
Mr. Michael Remondet, Jr.
Jeansonne & Remondet
200 West Congress Street
Lafayette, Louisiana 70509

Stephen J. Chapman

## INTERROGATORIES

**INTERROGATORY NO. 1:**    Describe, in your words, the circumstances surrounding the disappearance of a truck that was hauling the bleachers for the Chicago show.

**ANSWER**:

Objection. Said requests is vague and seeks information in the care custody and control of Defendants. Subject to said objection:

On or about August 27, 2001 the Circus hired Rex Trucking, Inc., a division of Louisiana Transportation, Inc. to provide drivers and trucks to transport from Harlingen, Texas to Chicago, Illinois, seven (7) Circus trailers, one of which contained a set of bleachers.

The Circus' trailers and their respective loads were placed under Rex Trucking's sole and exclusive custody, care, supervision, direction and control. Rex Trucking had exclusive control over its drivers and its trucks, in addition to the means, methods, and details of delivering the trailers to the Circus in Chicago. The truck transporting the Circus' trailer containing the bleachers was stolen and the trailer and bleachers never arrived in Chicago.

**INTERROGATORY NO. 2:**   Please state the seating capacity of the bleachers that were being hauled in the truck, the disappearance of which is the basis of this lawsuit.

**ANSWER:**

The seating capacity of the bleachers was 950 seats.

**INTERROGATORY NO. 3:** Please describe, in detail, the security measures you took to insure the safe transport of the bleachers from Harlingen, Texas to Chicago, Illinois

**ANSWER:**

Objection. Said requests is vague and seeks information in the care custody and control of Defendants. Subject to said objection:

Responses to Interrogatories Page 3

All responsibility and security measures as included in the signed Agreement were placed on the Defendants. Plaintiff is unaware of any security measures taken by the defendant responsible for doing so.

**INTERROGATORY NO. 4:** Please describe, in detail, all steps you took to mitigate your damages, if any, that resulted from the temporary loss of the bleachers.

**ANSWER:**

As a consequence of the stolen bleachers, the Circus was forced to rent bleachers to carry out its 26 performances in Chicago from August 31, 2001 through September 16, 2001. The cost of renting replacement bleachers was $9,000.00. The missing bleachers are custom made and custom fit to the tents. The rented bleachers, however, provided approximately 1/3 fewer seats than the Circus' bleachers. The Circus, therefore, suffered consequential damages of $6,000.00 per performance over 26 performances for a total of $156,000.00.

**INTERROGATORY NO. 5:** Please describe the particular needs of Plaintiff that allegedly required the need to order custom bleachers.

**ANSWER:**

The bleachers that were lost/ stolen were designed to conform to the shape of the circus tent, therefore, only custom made bleachers could be ordered to fit the circus tent for maximum seating and be in full compliance with all the applicable security and safety regulations.

**INTERROGATORY NO. 6:** Please describe all estimates you obtained with regard to the cost of replacement bleachers. In particular, please provide the names of all companies from which you received cost estimates for replacement. Also, please include the amount of each estimate, including the cost of shipping.

**ANSWER:**

Since the lost/stolen bleachers were custom made, the Circus only contacted Cannobio, the tent designers and provider of the original custom made bleachers. Cannobio had the correct specifications, size and shape of the tent to make the custom replacement bleachers. The Circus suffered damages in the amount of $128,844.46 for the purchase and shipment of the new bleachers.

**INTERROGATORY NO. 7:** Please state the date on which you learned that the bleachers made the basis of this lawsuit had been recovered.

**ANSWER:**

On or about November 21, 2001.

**INTERROGATORY NO. 8:** Please state the last date on which you could have cancelled the order you made for the replacement bleachers.

**ANSWER:**

The replacement bleachers could not be cancelled because it was a custom order for the Circus' tent. The Circus had already paid for the new bleachers by the time the old bleachers were found.

**INTERROGATORY NO. 9:** Please describe in detail any delays in performances that resulted from the temporary disappearance of the bleachers made the basis of this lawsuit.

**ANSWER:**

There were no delays in performances as a result of the lost/stolen bleachers, however, as a consequence of the stolen bleachers there were approximately 1/3 fewer seats available than the Circus' bleachers during the performances.

**INTERROGATORY NO. 10:** Please describe, in detail, the seating capacity of the bleachers you rented for your performances in Chicago, Illinois between August 31, 2001 to September 16, 2001.

**ANSWER:**

The rented bleachers only provided 300 seats.


**INTERROGATORY NO. 11:** Please describe, in detail, the seating capacity of the bleachers you purchased as alleged replacements for the bleachers, the temporary disappearance of which is the basis of this lawsuit.

**ANSWER:**

The replacement bleachers provide 950 seats.


**INTERROGATORY NO. 12:** Please state the originally scheduled dates for the Chicago show before you extended its run until September 16, 2001. Please include the number of shows you originally scheduled in Chicago, Illinois before you extended the show's run.

**ANSWER:**

The original dates were August 29, 2001 and September 9, 2001. There were originally 18 performances scheduled during this period.


**INTERROGATORY NO. 13:** Please state the number of additional performances you added in Chicago, Illinois between August 29, 2001 and September 16, 2001.

**ANSWER:**

The Circus added an additional 8 performances between August 29, 2001 and September 16, 2001.

**INTERROGATORY NO. 14:** Please describe the date on which you received shipment of the replacement bleachers you purchased.

**ANSWER:**

The replacement bleachers were shipped to Florida on or about November 28, 2001.

**INTERROGATORY NO. 15:** Please state the last date you could have cancelled the order for the replacement bleachers you purchased as alleged replacements for the bleachers, the disappearance of which forms the basis of this lawsuit.

**ANSWER:**

See response to Interrogatory #8.

**INTERROGATORY NO. 16:** Please list all persons that assisted in the preparation of your answers to these Interrogatories.

**ANSWER:**

Ernesto Vilanova Velez, Jorge Gonzalez, Rigoberto Garcia, Edwin Rivera and The National Hispanic Circus' counsel assisted in the preparation of the answers to these Interrogatories.

**INTERROGATORY NO. 17:** Please state whether or not the person (2) answering these Interrogatories has been convicted of a crime or of a felony within the last ten (10) years, of released from confinement within the last ten (10) years. If so, please state the nature of the conviction, the country in which the conviction occurred, and the date of conviction or release from confinement, whichever is later.

**ANSWER:**

Responses to Interrogatories Page 7

Objection. Said request is a fishing expedition and is not calculated to lead to the discovery of admissible evidence.  Subject to said objection, None.

**INTERROGATORY NO. 18:** Please list all lawsuits that you have been involved in.  Please include the court in which the lawsuits were filed, the nature of the lawsuits, and the disposition of the lawsuit.

**ANSWER:**

The Plaintiff objects to this Interrogatory on the grounds that it is not relevant to the facts or subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE NATIONAL HISPANIC | § | |
| CIRCUS, INC. A NEW YORK | § | |
| NOT-FOR-PROFIT CORPORATION | § | |
| Plaintiff | § | |
| | § | |
| V | § | CIVIL ACTION NO. B-02-135 |
| | § | |
| REX TRUCKING, INC., A TEXAS | § | |
| CORPORATION, AND THE MASON | § | JURY DEMANDED |
| AND DIXON LINES, INC. A MICHIGAN | § | |
| CORPORATION | § | |
| Defendants | § | |

## VERIFICATION

[FORM 2]

| | |
|---|---|
| TERRITORY | § |
| | § |

BEFORE ME, the undersigned authority, a Notary Public, personally appeared _Ernesto Velandia Velez_, known to me to be the person whose name is subscribed below, who after being duly sworn by me, upon his/her oath deposed and stated:

1.   that he/she is an authorized representative of Plaintiff, THE NATIONAL HISPANIC CIRCUS, INC.;

2.   that he/she has read the Answers to Interrogatories; and

3.   that all the information and statements contained in the Answers to Interrogatories save and except the legal terminology are true and correct based upon The National Hispanic Circus, Inc.'s information and belief.

Signed this _20_ day of _August_ 2003.

_____
REPRESENTATIVE OF THE NATIONAL
HISPANIC CIRCUS, INC.

Page 1

AFFIDAVIT - 3314

SUBSCRIBED AND SWORN TO BEFORE ME on this 20 day of August 2003, to certify which witness my hand and seal of office.



NOTARY PUBLIC

Page 2