# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

JUN 2 5 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk D.Guimada

| | | |
|---|---|---|
| THE NATIONAL HISPANIC CIRCUS, INC., a New York not-for-profit Corp.<br>Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. B-02-135 |
| REX TRUCKING, INC., a Texas Corporation, and THE MASON AND DIXON LINES, INC., A Michigan Corporation<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§ | |

## MEMORANDUM OPINION

Before the court are Plaintiff's "Motion For Entry Of Judgment" and Defendant's "Opposition To Plaintiff's Motion For Entry Of Judgment And Defendant's Renewed Motion For Judgment As A Matter Of Law And Alternative Motion For A New Trial." After considering all of the relevant arguments, for the reasons stated below, the court **DENIES** Defendant's motion for a new trial and **DENIES IN PART AND GRANTS IN PART** its motion for judgment as a matter of law. The court also **DENIES IN PART AND GRANTS IN PART** Plaintiff's Motion for Entry of Judgment to the extent set forth below.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff The National Hispanic Circus ("Plaintiff"), a traveling bilingual circus, contracted with Defendant The Mason and Dixon Lines, Inc. ("Defendant"), a trucking company that transports and delivers cargo, to transport seven circus trailers from Harlingen, Texas, to Chicago, Illinois, prior to August 31, 2001, the commencement date of Plaintiff's scheduled

appearance in Chicago. Shortly after Defendant took possession of the trailers, the truck and the trailer transporting one-half of Plaintiff's bleachers were lost. The lost bleachers were specially designed and constructed for the circus' tent shape. Plaintiff rented replacement bleachers, which possessed 300 fewer seats than those lost, for its Chicago shows. On or about September 19, 2001, Plaintiff, having not yet received any information on the location of the misplaced bleachers, ordered new bleachers to complete its performances for the remainder of its 2001 national tour.

Based on the design of Plaintiff's tent, the new bleachers had to be specially made. Consequently, Plaintiff had to purchase them from Canobbio, its supplier for its tents and bleachers, which is located in Italy. As the bleachers had to be special ordered—i.e., constructed only after the order was placed rather than being able to purchase them off-the-shelf—Plaintiff had to prepay for them. The purchase price was $87,500.

The lost bleachers were eventually located in Arkansas on November 21, 2001, almost three months after their disappearance and after Plaintiff had paid for the replacement bleachers. Once the bleachers were found, Plaintiff had to go and get them rather than Defendant delivering them. Plaintiff's replacement bleachers were shipped from Italy to the United States on November 28, 2001, and the shipping cost was $36,104. Plaintiff was responsible for seventy-five percent (75%) of that cost even if it had cancelled its order after the old bleachers had been located.

Plaintiff brought suit under the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706, *et seq.*, seeking to recover the damages suffered due to Defendant's temporary loss of the bleachers, including: 1) the cost of renting replacement bleachers, 2) the loss of ticket sales for both its originally scheduled Chicago performances and

2

one week of extended performances allegedly precipitated by the reduced seating capacity of the rented bleachers, and 3) the purchase price of new bleachers. Defendant brought a counterclaim for unpaid freight transportation charges. The parties presented this case to a jury from January 28, 2004, through January 29, 2004. At the close of evidence, Defendant moved for entry of judgment as a matter of law in its favor concerning Plaintiff's claims for the purchase price of the new bleachers and for the lost ticket sales. The court denied the motion. On January 30, 2004, the jury returned a verdict, awarding Plaintiff $9,000 for the cost of renting bleachers, $123,000 for the cost of purchasing new bleachers, and $16,500 for lost ticket sales and awarding Defendant $15,600 on its counterclaim.

Post-trial, Plaintiff filed a motion for entry of judgment, requesting that the court enter judgment upon the jury's verdict and award pre and postjudgment interest. Defendant filed an opposition to Plaintiff's motion and a renewed motion for judgment as a matter of law or, in the alternative, a motion for a new trial, attacking the jury's verdict on myriad grounds.

## II. Standard of Review

### 1. Judgment as a Matter of Law

A judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is proper after a party has been fully heard by the jury on a given issue and "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed.R.Civ.P. 50(a); Pineda v. United Parcel Service, Inc., 360 F.3d 483, 486 (5th Cir. 2004). A district court properly grants such a motion only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable people could not arrive at a verdict to the contrary." First Nat. Bank of Durant v. Trans Terra Corp. Intern., 142 F.3d 802,

3

806 (5th Cir. 1998).  When reviewing a Rule 50(a) motion, a court is to contemplate all of the

evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of

the nonmoving party and leaving credibility determinations, the weighing of the evidence, and

the drawing of legitimate inferences from the facts to the jury.  Foreman v. Babcock & Wilcox

Co., 117 F.3d 800, 804 (5th Cir. 1997).

### 2. Motion for a New Trial

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a district court may grant a

new trial "on all or part of the issues ... for any reasons for which new trials have heretofore been

granted in actions at law in the courts of the United States."  Fed.R.Civ.P. 59(a).  Though Rule

59(a) does not specify grounds for a new trial, " a district court may grant a new trial if the court

finds that the verdict is against the weight of evidence, the damages awarded are excessive or

inadequate, the trial was unfair, or prejudicial error was committed in its course."  Oyefodun v.

City of New Orleans, No. CIV.A. 98-3283, 2001 WL 775574, *2 (E.D.La. July 9, 2001)

(unpublished opinion).  Whether to grant or deny a motion for a new trial is within the trial

court's discretion.  Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998).

## III. DISCUSSION

Defendant challenges the jury's verdict, arguing that: 1) the cost of the new bleachers and the

lost ticket sales are not recoverable due to lack of actual notice; 2) the jury's finding that Plaintiff

gave Defendant actual notice that it would incur the cost of the new bleachers and lost profits in

the event of delayed delivery is not supported by sufficient evidence; 3) the court erred in refusing

Defendant's request to instruct the jury to determine whether Plaintiff's purchase of the new

bleachers and the lost ticket sales were reasonably foreseeable in the absence of actual notice to

4

Defendant; and 4) the court erred in precluding Defendant from presenting evidence regarding the residual salvage value of Plaintiff's original set of bleachers.  This court finds that none of Defendant's arguments have any merit.

### 1. The Court's Jury Instructions as to Defendant's Liability under the Carmack Amendment

Defendant advances in its motion the very same argument it presented to the court during the jury charge conference: the court should have instructed the jury in the jury charge to determine whether the purchase price of the new bleachers and the lost ticket sales were reasonably foreseeable **in the absence of actual notice** to Defendant at the time the contract was consummated.  Def. Motion at 12.  The issue at the charge conference was whether the court should include the phrase "in the absence of actual notice" in question two of the jury charge.  The court, at the conference, rejected Defendant's proposed instruction—i.e., inclusion of that phrase—and instead instructed the jury to determine whether the purchase of the new bleachers and the lost ticket sales "...were a reasonably foreseeable result (at the time the parties agreed to ship the goods) of the failure of the defendant, Mason and Dixon, to timely deliver the plaintiff's, National Hispanic Circus,  trailer."

Defendant further maintains in its motion that the cost of the new set of bleachers and the lost ticket sales were special damages that, as a matter of law, Plaintiff was not entitled to recover because it had not given Defendant actual notice of the trailer's contents and of the consequences that would result from delayed delivery at the time the parties entered the contract.  Defendant maintains that these damages were not reasonably foreseeable without such actual notice.

The court's refusal to give Defendant's requested jury instruction was erroneous only if

Defendant's instruction 1) was a substantially correct statement of the law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired Defendant's ability to present a given claim. U.S. v. McClatchy, 249 F.3d 348, 356 (5th Cir. 2001). This court enjoys substantial latitude in tailoring the instructions. See id.

As the Carmack Amendment governs a claim for damages resulting from the transportation of cargo in interstate commerce, it controlled the determination of liability with respect to Plaintiff's claims. Moffit v. Bekins Van Lines Co., 6 F.3d 305, 306 (5th Cir. 1993). Under the Carmack Amendment, a carrier, such as Defendant, is fully liable for the "actual loss or injury to the property." 49 U.S.C. § 14706(a)(1). The Supreme Court has interpreted the scope of carrier liability covered by the Carmack Amendment to extend beyond the claims for damages to the property being delivered. See New York, P. & N. R. Co. v. Peninsula Produce Exch. of Maryland, 240 U.S. 34, 38-39, 36 S.Ct. 230, 60 L.Ed. 511 (1916) (holding that the language of the Amendment was comprehensive enough to cover all damages resulting from the failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination when addressing the question of whether the Amendment imposed liability for a delay of shipment without physical damage to the property being transported); Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936) (holding that the Amendment applied to a suit for damages for the interruption of a plaintiff's business caused by the late delivery of a motion picture).

The Fifth Circuit Court of Appeals has recognized the Supreme Court's broad interpretation of carrier liability under the Carmack Amendment: "[d]espite the apparent statutory limitation to

6

recovery of damage caused to the property itself transported, the Supreme Court ... from its earliest interpretation has consistently construed the Amendment" as imposing much more than liability for damage to the property conveyed. Air Products and Chemicals, Inc. v Illinois Central Gulf R.Co., 721 F.2d 483, 485 (5th Cir. 1983), cert. denied, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). Lower courts have followed the Supreme Court's lead and have interpreted the Carmack Amendment as applying to cases that do not involve damage to the transported property itself. See Air Products, 721 F.2d at 485 (holding that the Carmack Amendment provided the remedy for a breach of a carrier's duty to deliver the correct chemical to a plaintiff that was damaged by the delivery of the wrong chemical); American Synthetic Rubber Corp. v. Louisville & N.R. Co., 422 F.2d 462, 464-65 (6th Cir. 1970) (holding that the Amendment applied to any cause of action arising by virtue of a breach of an interstate contract of carriage in a suit for damages resulting from the delivery of a wrong chemical, with no damage to the correct chemical that was later delivered).

Pursuant to the Carmack Amendment, damages are determined by common law principles as adopted by federal law. Hector Martinez and Co. v. Southern Pac. Transp. Co., 606 F.2d 106, 108 & n. 1 (5th Cir. 1979), reh'g denied, 609 F.2d 1008 (5th Cir. 1979); cert. denied, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed. 838 (1980). General damages are recoverable if the injury was foreseeable to the carrier, i.e., if the injury was the proximate and usual consequence of the carrier's action. Id. at 109. Conversely, special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of the breach of the contract of carriage when such contract was formed and are awarded only if the shipper provided actual notice to the carrier of the special circumstances giving rise to such damages at the time the contract was consummated. Texas

7

A&M Research Foundation v. Magna Transp., Inc., 338 F.3d 394, 404 (5th Cir. 2003); Hector Martinez, 606 F.2d at 108-11.

The foregoing discussion makes clear that both Defendant's proposed jury instruction and argument that the cost of the new bleachers and the lost ticket sales were special damages misstates the applicable law. The Carmack Amendment subjected Defendant to liability for "all reasonably foreseeable consequential damages." See Air Products, 721 F.2d at 485. Further, whether Plaintiff's damages were reasonably foreseeable when the parties entered the contract to transport the bleachers was a fact question to be answered by the jury. See Hector Martinez, 606 F.2d at 110.

Consequently, it was the province of the jury to determine whether the purchase price of the new bleachers and the lost ticket sales were general, i.e., reasonably foreseeable as being the proximate and usual consequence of Defendant's improper actions or special. See id. The court's instructions to the jury properly reflected this principle: question two of the jury charge instructed the jury to determine whether the cost of the new bleachers and the lost ticket sales were a reasonably foreseeable result of Defendant's failure to timely deliver Plaintiff's trailer. Only if the jury had concluded that such damages were not reasonably foreseeable did it have to decide whether Defendant had actual notice of the special circumstances from which Plaintiff's damages flowed. See id.; Texas A&M Research Foundation, 338 F.3d at 404. Question three of the jury charge stated as much, instructing that, if the jury found in question two that the damages at issue were not reasonably foreseeable, it had to determine whether Plaintiff had given Defendant actual notice—at the time the parties agreed to ship the goods—that such damages would result if any of the shipment was lost. Accordingly, the jury charge adequately, clearly, and correctly stated the

8

controlling law of the case.

In support of its claim that the court improperly instructed the jury on the applicable law, Defendant makes much of the fact that the jury answered question three when it was instructed not to do so based upon an affirmative response to question two. Defendant asserts that the jury's failure to properly follow the instructions demonstrates that the court's instruction on the issue of damages "hopelessly confused" the jury and resulted in inconsistent answers because the charge erroneously stated the law. Def. Motion at 6, 13.

Question two contained the following instruction:

> What items listed below, if any, were a reasonably foreseeable result (at the time the parties agreed to ship the goods) of the failure of the defendant, Mason and Dixon, to timely deliver the plaintiff's, National Hispanic Circus, trailer.
>
> Answer Yes or No:
>
> Rental of Bleachers            _____
> Purchase of New Bleachers      _____
> Lost Ticket Sales              _____
>
> If you answered 'No' to any item listed above in question two (2), then answer question three (3). Otherwise go to question four (4).

Though the jury answered "Yes" to the rental of the bleachers, the purchase of the new bleachers, and the lost ticket sales, it ignored the court's instructions to refrain from answering question three. Question three instructed:

> Only answer question three (3), **IF** any of the answers to question two (2) were 'No.' Answer question three (3) **ONLY** for the item(s) that you answered 'No' for in question two (2). If your answers to question two (2) were all 'Yes,' go directly to question four (4).
>
> Of the items listed below, if any, which did the plaintiff, National Hispanic Circus, give the defendant, Mason and Dixon, actual notice—at the time the parties agreed to ship the goods—that such damages, if any, would result if any of the shipment was lost?

9

Answer 'Yes' if notice was given or 'No' if notice was not given.

Rental of Bleachers          _____
Purchase of New Bleachers    _____
Lost Ticket Sales            _____

The jury answered yes to the rental of the bleachers, the purchase of new bleachers, and the lost ticket sales.

Importantly, the court initially notes that there is nothing inconsistent with the jury's responses to questions two and three. A jury's answers "should be considered inconsistent ... *only* if there is no way to reconcile them." Willard v. The John Hayward, 577 F.2d 1009, 1011 (5th Cir. 1978). "The test of consistency is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted." Central Progressive Bank v. Fireman's Fund Ins. Co., 658 F.2d 377, 382 (5th Cir. 1981) (citation and internal quotation marks omitted). The jury in the present case could logically have found that the cost of the new bleachers and the lost ticket sales were a reasonably foreseeable result of Defendant's negligence and that Defendant had actual notice at the time the parties agreed to ship the goods that such damages would result if Plaintiff's original bleachers were lost.

Even if the jury's answers were found to be inconsistent, it is well-settled in the Fifth Circuit that a jury's answers are not irreconcilably inconsistent where potentially inconsistent answers were in response to questions that the jury should not have answered. "[I]f the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions." White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987); see also Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir. 1988),

10

reh'g denied, 860 F.2d 437 (5th Cir. 1988), cert. denied, 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989).  This court enjoys broad discretionary power when determining whether a jury's answers to its questions are clear and when determining whether to decline to consider interrogatories answered in contravention of its instructions.  Richard, 853 F.2d at 1260; Carr v. Wal-Mart Stores Inc., 312 F.3d 667, 674 (5th Cir. 2002) ("... a district court does not abuse its discretion in reconciling verdicts containing answers to interrogatories that the jury was instructed not to answer, when it either disregards the superfluous answers in their entirety, or resubmits the interrogatories to the jury.").

The court in the present case properly exercised its discretion in deciding that the jury's answers to question two were clear, in accepting the jury's responses to question two as dispositive of the issue, and in determining that the responses to question three were unnecessary.  See Richard, 853 F.2d at 1260.  Though the responses in question three were proffered despite the court's express instructions contained in the verdict form, said responses were superfluous answers that were appropriately disregarded as surplusage.  See id. (the Fifth Circuit Court of Appeals noted that it had previously approved a district judge's decision to dismiss answers as surplusage in White).  Further, as superfluous answers must be disregarded as surplusage, Defendant's contention that the jury's responses to question three were not supported by sufficient evidence is moot.

### 2.  The Proper Measure of Damages for the New Bleachers

Defendant contends that, "putting aside for the moment the Circus' failure to provide the required actual notice," Plaintiff is not entitled to recover the cost of the new bleachers because the proper measure of damages for freight lost in transit is the reasonable market value of the lost

property.[1]  Def. Motion at 9.  Defendant's contention in effect maintains that the court erred in charging the jury as to the applicable standard for measuring damages.

The court notes that Defendant never raised this issue at trial.  Rule 51 of the Federal Rules of Civil Procedure provides that no party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Fed.R.Civ.P. 51.  Defendant certainly should have objected to the measure of damages as required by Rule 51.  Nevertheless, an exception to the contemporaneous objection requirement of Rule 51 is the plain error doctrine. See Fruge v. Penrod Drilling Co., 918 F.2d 1163, 1169 (5th Cir. 1990).  A court, despite a party's failure to object, should act to prevent "a miscarriage of justice resulting from an instruction based on fundamental error." Rodrigue v. Dixilyn Corp., 620 F.2d 537, 540 (5th Cir. 1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).  In the civil context, a party will prevail under this standard if a court finds 1) that an error occurred; 2) that the error was plain, which means clear or obvious; 3) the plain error affected substantial rights; and 4) not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. See Russell v. Plano Bank & Trust, 130 F.3d 715, 721 (5th Cir. 1997), cert. denied, 523 U.S. 1120, 118 S.Ct. 1801, 140 L.Ed.2d 941 (1998).

The court in the present case correctly determined that the standard to be used to measure Plaintiff's "actual loss" was the purchase price of the new bleachers. See Hector Martinez, 606 F.2d at 110 ("In deciding which measure of damage to apply, courts look to the actual loss

---

[1] Defendant only contests the measure of damages as to the new bleachers purchased, not the $9,000 cost for the rented bleachers.

suffered by the plaintiff and the common law rule of compensating that loss."). <u>Air Products and</u>
<u>Chemicals, Inc. v. Illinois Central Gulf R. Co</u>, while not factually similar, was instructive to this
court when determining the proper measure of Plaintiff's damages. 721 F.2d at 483. In <u>Air</u>
<u>Products</u>, the Court awarded damages for the misdelivery of a chemical. <u>Id.</u> at 485. The plaintiff
had ordered a certain chemical to be delivered over a period of days. <u>Id.</u> The defendant delivered
four tank cars, three of which contained the correct chemical and one which contained a different
chemical than that for which bills of lading were issued. <u>Id.</u> The plaintiff, unaware of the
misdelivery, emptied all four tank cars into a storage tank of a chemical on its premises,
contaminating the entire contents. <u>Id.</u> The reprocessing costs resulted in damages of $73,393.12,
which was the amount awarded to the plaintiff. <u>Id.</u>

   As previously mentioned, the Court in <u>Air Products</u> noted that the Supreme Court's
interpretation of a carrier's liability in Carmack Amendment cases was broad: "[t]he words 'any
loss, damage, or injury to such property' ... are comprehensive enough to embrace all damages
resulting from any failure to discharge a carrier's duty with respect to any part of the
transportation to the agreed destination." <u>Id.</u> at 486 (quoting <u>Peninsula Produce Exchange</u>, 240
U.S. at 38). The <u>Air Products</u> court reasoned that the misdelivery resulted from a breach in the
defendant's duty to deliver to the plaintiff the correct product and held that the defendant was
liable for "all reasonably foreseeable consequential damages ... including those resulting from
nondelivery of the shipped goods as provided by the bill of lading." <u>Id.</u> at 485.

   This court adopted and applied the reasoning of <u>Air Products</u> when it determined the proper
measure of Plaintiff's damages. Just as the defendant in <u>Air Products</u> was liable for "all
reasonably foreseeable damages," Defendant in the present case is likewise liable for such

13

damages, including those resulting from the delayed delivery of Plaintiff's bleachers.[2]  See id.  At

trial, Plaintiff presented undisputed testimony that the original bleachers that were lost had no

salvage value.  Plaintiff adduced sufficient evidence at trial to prove that its damages included the

cost of the new bleachers and that this cost was "reasonably foreseeable."  The purpose of a

damage award in Carmack Amendment cases is to "put the shipper back in the position it would

have been in had the carrier properly performed...."  American Nat. Fire Ins. Co. ex rel.

Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc., 325 F.3d 924, 931 (7th Cir.

2003).  Recovery of the cost of substitute bleachers best effectuated this purpose.  Accordingly,

the court did not err when determining that the purchase price of the new bleachers was the proper

measure of damages to be contemplated by the jury.

　　The court notes that, under the Carmack Amendment, actual loss or injury to the property is

generally measured by the difference between the market value of the property in the condition in

which it should have arrived at its destination and its market value in the condition in which it did

arrive.  Gulf, C. & S.F. Ry. Co. v. Texas Packing Co., 244 U.S. 31, 37, 37 S.Ct. 487, 61 L.Ed. 970

(1917).  An alternative measure of damages utilized is replacement cost—the amount it costs the

shipper to replace damaged or lost goods, typically when the shipper has not lost a sale, but was

able to timely purchase replacements.  See Oak Hall Cap & Gown Co. v. Old Dominion Freight

Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990); American Tele & Tele., Inc. v. Con-Way S. Exp.,

---

[2] In fact, to describe this as a "delayed delivery" is to ignore the undisputed factual
testimony that the bleachers were never delivered to Chicago, or anywhere else, as per the
parties' agreement.  The bleachers were found almost three months after they were lost and then
Plaintiff, itself, had to physically retrieve them.

Inc., No. C-95-1472BZ, 1996 WL 24763, at *2 (N.D.Cal. Jan. 17, 1996) (unpublished opinion).[3]

However, "[t]he test of market value is at best but a convenient means of getting at the loss

suffered. It may be discarded and other more accurate means resorted to, if, for special reasons, it

is not exact or otherwise not applicable." Illinois Cent. R. Co., 281 U.S. at 64-65. Both the

market value rule and the replacement cost rule are the typical measure of damages where an item

at issue was intended to be sold. See American Nat. Fire Ins. Co., 325 F.3d at 924 (presenting a

thorough discussion on both standards of measurement within the context of determining whether

the cost of freight may be recovered). As Plaintiff's lost bleachers were not a commodity

intended to be resold for profit, neither of the rationales underlying the use of either method was

applicable in this instance nor either rule an appropriate measure of damages.

### 3. Admission of Lay Opinion Testimony

Defendant maintains that the court precluded it from presenting testimony to rebut Plaintiff's

salvage value evidence with respect to the original bleachers. Defendant's argument, however, is

somewhat misleading. The court did not prevent Defendant from putting on such evidence.

Indeed, the court afforded Defendant the opportunity to put forth testimony as to the bleachers'

---

[3] The market value rule rather than the replacement cost is the traditional measure of damages because the former assumes that the replacement cost usually inadequately compensates a plaintiff because recovering such costs "deprive a manufacturer of expected profit which he is on the verge of earning and do not compensate him for what he would have had if the contract had been performed." Polaroid Corp. v. Schuster's Express, Inc., 484 F.2d 349, 351 (1st Cir. 1973). Courts have found that "special reasons" that render the market value rule inapplicable exist where the shipper can replace the shipment at cost and has suffered no loss of profit. Philips Consumer Elecs. Co. v. Arrow Carrier Corp., 785 F.Supp. 436, 441 (S.D.N.Y. 1992), aff'd without op., 999 F.2d 537 (3rd Cir. 1993). The burden of proof is on the defendant carrier to show such "special reasons." Eastman Kodak Co. v. Westway Motor Freight, Inc., 949 F.2d 317, 319 (10th Cir. 1991); Philips Consumer Elecs. Co., 785 F.Supp. at 441. The theory underscoring finding the market value rule inapplicable is that "the shipper has received the profit and thus should not be accorded more than full compensation for the loss it sustained." Id.

salvage value over the objection of Plaintiff, but then made evidentiary rulings limiting same when it was shown that Defendant's witness failed to draw his conclusions from observations informed by his own experience or based upon any expertise. See Fed.R.Evid. 701 and 702.

In response to Plaintiff's presentation of testimony by Rigoberto Garcia, the general manager of the circus at the time the injury arose, intended to show that Plaintiff's original set of bleachers had no salvage value, Defendant sought to present testimony from Ralph Castille ("Castille"), the corporate claims manager for Defendant, who regularly sold salvaged goods. Trial Transcript at 204. Plaintiff's counsel objected to the lack of foundation for the bleachers, the specific type of product at issue in the case. Id. at 217. The court instructed Defendant's counsel to set a better foundation. Id.

Defendant's counsel asked Castille "[i]f you got a call about these bleachers, what would you do with it? What would you do with that information?" Id. at 220. Castille testified, "[i]f I had possession of the bleachers right now, I could sell those bleachers." Id. When Defendant asked where he would sell them, Plaintiff objected, stating the question called for speculation. Id. The court, however, allowed Castille to answer. Castille responded:

> [t]hey obviously have some utility in some format. The idea that these bleachers cannot be used other than within a closed environment, in a tent, for example, because of the alleged contour of the tent, is, in my opinion, absurd. It's obvious that these bleachers could be used in an outdoor venue, possibly as bleachers for a soccer match, you know, the—with the sky being the canopy, if you will. There is a market for those bleachers. They could be sold.

Id. at 220-21. Plaintiff's counsel objected to the answer as assuming facts not in evidence, and the court sustained the objection. Id. at 221. When Castille was describing who he would contact in order to try to sell the bleachers, Plaintiff's counsel again objected to the entire line of

16

questioning, arguing that Defendant's counsel had failed to prove that Castille had any knowledge

of how to sell circus bleachers or was aware of a market for same. Id. at 222. Plaintiff's counsel

maintained that Castille was speaking generically about other products. Id. The court did not

sustain the objection, but rather stated that the jury could weigh the testimony and that Plaintiff

could bring out that point on cross-examination. Id. When Defendant's counsel asked Castille

what percentage of value could he obtain for similar bleachers based on his experience, Plaintiff's

counsel objected, and the court sustained the objection. Id.

    Defendant's counsel never attempted to qualify Castille as an expert on the sale of used

bleachers or any other topic. Therefore, at best Castille's opinion as to the salvage value would

have to qualify under Rule 701 of the Federal Rules of Evidence to be admissible. See

Fed.R.Evid. 701. Pursuant to Rule 701, "a lay opinion must be based upon personal perception,

must be one that a normal person would form from those perceptions, and must be helpful to the

jury." United States v. Riddle, 103 F.3d 423, 428 (5th Cir. 1997) (quotation omitted). Lay

opinion testimony may be elicited only if it is based on the witness' first-hand knowledge or

observations. See Robinson v. Bump, 894 F.2d 758, 763 (5th Cir. 1990), cert. denied, 498 U.S.

823, 111 S.Ct. 73, 112 L.Ed.2d 46 (1996).

    Despite being given the opportunity by the court, Defendant's counsel never established that

Castille had ever been directly involved in the selling of circus bleachers or, for that matter, any

bleachers. Consequently, it was never shown that Castille possessed the type of first-hand

knowledge necessary to provide reliable forecasts of either the market for or the value of

Plaintiff's bleachers. His generic experience simply did not pass Rule 701 scrutiny, nor would it

17

have qualified him as an expert had Defendant attempted to do so.[4]  Accordingly, the court, after

giving Defendant's counsel an opportunity to lay the appropriate groundwork, properly sustained

Plaintiff's objections and limited Castille's testimony.

### 4. Jury's Award for Lost Ticket Sales

Plaintiff moves the court to enter judgment upon the jury's award of $16,500 for lost ticket

sales.  Defendant claims that the lost ticket sales were special damages that were not recoverable

because Plaintiff did not give it actual notice of the possibility of such damages at the time the

contract was consummated.  Def. Motion at 10.

The Carmack Amendment authorizes recovery for lost profits unless they are speculative.

Hector Martinez, 606 F.2d at 109, 110 n. 7 (noting that under the specific facts of that case lost

profits were not foreseeable and the plaintiff would therefore have had to plead notice had he

sought to recover same); Camar Corp. v. Preston Trucking Co., Inc., 221 F.3d 271, 277 (1st Cir.

2000) (citing Hector Martinez for same).  "Although mathematical precision is not required in

calculating lost profits, a damages award must have a rational basis in the evidence." Camar, 221

F.3d at 279 (citation and internal quotation marks omitted).  The evidence of lost ticket sales

presented at trial in the instance case was far too speculative to form a reliable basis from which a

jury could determine the actual value of such damages.  Accordingly, the court will grant

Defendant's objection to this portion of the jury's damage award and reform the verdict,

---

[4] Rule 702 of the Federal Rules of Evidence provides that "... a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise" if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.  Fed.R.Evid. 702; Mathis v. Exxon Corp., 302 F.3d 448, 460 (5th Cir. 2002).  As discussed above, Castille was not qualified as an expert, and he did not possess any facts or data concerning circus bleachers.

eliminating the jury's grant of lost ticket sales.

### 5. Award of Prejudgment Interest

Plaintiff requests that prejudgment interest be included in the jury's damage award, though in its motion it neither specified an interest rate nor the date from which said interest should accrue. Defendant did not object in its motion to such an award.

The Fifth Circuit Court of Appeals has held that prejudgment interest should be permitted in Carmack Amendment actions. See Louisiana & A. Ry. Co. v. Export Drum Co., 359 F.2d 311, 317 (5th Cir. 1966) (accepting the common law rationale for awarding prejudgment interest to make whole the plaintiff for money lent and concluding that awarding prejudgment interest should become the federal standard in Carmack Amendment cases); see also Co-Operative Shippers, Inc. v. Atchison, Topeka and Santa Fe Ry Co., 624 F.Supp. 797, 800 (N.D.Ill. 1985), aff'd in part, rev'd in part, 840 F.2d 447 (1988) (award of prejudgment interest as part of the full actual loss is proper under the Carmack Amendment). Consequently, Plaintiff is entitled to recover prejudgment interest.

The court, however, must determine the rate at which such interest should be calculated. The court has broad discretion in setting the rate of prejudgment interest. Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026, 1029 (5th Cir. 1986). The Carmack Amendment is silent on the issue of rate. Further, there is no federal statutory interest rate on prejudgment interest, and Fifth Circuit case law does not speak with one voice on the appropriate rate to be employed. Some cases hold that 28 U.S.C. § 1961 should be utilized when fixing the rate of prejudgment interest when the

case involves a federal question that must be governed by federal law.[5] See, e.g., Reeled Tubing

Inc., 794 F.2d at 1029 (in setting the prejudgment interest rate, a court may look to reasonable

guideposts, including the interest rates set forth in 28 U.S.C. § 1961); Southern Pacific Transp.

Co. v. San Antonio, Tex. By and Through City Public Service Bd., 748 F.2d 266, 275 (5th Cir.

1984) (in suit under the Interstate Commerce Act for freight undercharges, applying a federal rate

to an award of prejudgment interest, noting that an award at the Section 1961 rate would be

appropriate but for the fact that the Act itself, at 49 U.S.C. § 10707, provided a different rate for

cases involving railroad tariffs); Cramer v. Association Life Ins. Co., 619 So.2d 821, 827 (La Ct.

App. 1993) (holding that federal law was applicable in determining the rate at which interest

could be calculated in ERISA case).  Contrarily, other cases have looked to state law for guidance

in determining the interest rate where the federal statute in question is silent as to the issue of

prejudgment interest.  Hansen v. The Continental Ins. Co., 940 F.2d 971, 983-84 (5th Cir. 1991)

(concluding same in absence of explicit congressional directive in ERISA); U.S. for Use and

Benefit of Canion v. Randall & Blake, 817 F.2d 1188,1193 (5th Cir. 1987) (holding same within

the context of the Miller Act).  Case law outside the Fifth Circuit is just as divided on the issue of

the applicable rate.  See, e.g., Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1331 (8th Cir. 1995);

(applying Section 1961's interest rate); Rybarczyk v. TRW, Inc., Nos. 1:95CV2800, 1:96CV2493,

1997 WL 580609, *2-*3 (N.D.Ohio Sept. 5, 1997) (unpublished opinion) (applying same and

citing cases in support thereof); Paper Magic Group, Inc. v. J.B. Hunt Transport, Inc., No. Civ.A.

---

[5] 28 U.S.C. § 1961 fixes the rate on postjudgment interest for civil judgments in district courts.  See 28 U.S.C. § 1961(a).  Section 1961 fixes the interest rate at the rate on fifty-two week Treasury bills at the last auction of those bills immediately prior to the entering of judgment.  Id.

00-5590, 2001 WL 1003052, *5 (E.D.Pa. August 29, 2001) (unpublished opinion) (Carmack

Amendment action awarding 6% per annum prejudgment interest, the legal rate under

Pennsylvania law).

This court finds that the award of prejudgment interest in the present case, which involves a

federal law violation, should be fixed at the rate set forth in Section 1961.  Since both parties have

conceded throughout the trial that federal law has controlled, the court believes that federal law

should determine the prejudgment interest rate as well.  Although Section 1961 specifically

applies only to postjudgment interest, so long as prejudgment interest is proper in this case under

federal law, it, too, should be determined by a federal rate. This court can think of no rational

reason to set a nonfederal rate for the prejudgment interest.  See Southern Pacific Transportation

Co., 748 F.2d at 275.

The court must next determine which Section 1961 rate to apply, as this rate is not constant.

Again, case law does not present one clear-cut choice.  Possible options include the Section 1961

rate at the time of loss, see Reeled Tubing, Inc., 794 F.2d at 1029 (approving application of the

rate prevailing under 28 U.S.C. § 1961 at the time the loss occurred), utilizing the applicable rates

for each of the years involved in such calculations, see Odom v. Frank, 782 F.Supp. 50, 52

(N.D.Tex.1991) (appropriate interest rate to use in computing prejudgment interest on back pay to

postal worker was postjudgment rate pursuant to 28 U.S.C. § 1961 for each yearly increment of

back pay, resulting in the interest rate varying from year to year), or the Section 1961 rate as of the

date judgment is entered.  This court finds that the most equitable rate is 2.22%, the rate as of the

date judgment is entered, as it reflects the interest rate (under Section 1961) throughout the

prejudgment period.

The date from which the prejudgment interest should accrue is also at issue.  Various dates of accrual have been employed by courts in Carmack Amendment cases.  See Action Drug Co., Inc. v. Overnite Transp. Co., 724 F.Supp. 269, 277 (D.Del. 1989) (awarding prejudgment interest from the day immediately following the latest date the shipment could reasonably have been considered timely); Continental Can Co., Inc. v. Eazor Express, Inc., (964) Fed.Carr.Rep. (CCH) P 81, 701 (S.D.N.Y. 1964), aff'd, 354 F.2d 222 (2nd Cir. 1965) (awarding prejudgment interest on the amount of repairs for a damaged machine from the date delivery should have been made); see also Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., No. 02 Civ. 5258(GEL), 2003 WL 22416139 (S.D.N.Y. October 22, 2003) (unpublished opinion) (applying the federal postjudgment rate as the prejudgment interest rate from the date of the loss of cargo in a Carmack Amendment case).

In the present case, with respect to prejudgment interest, the accrual date is somewhat hard to define with precision.  The $9,000 awarded for the rental of the substitute bleachers was presumably paid prior to August 31, 2001, the date of Plaintiff's first show in Chicago.  The replacement bleachers were ordered on September 19, 2001, at a cost of $87,500, but it is somewhat ambiguous whether the monies were paid immediately with the order or over time during the next three months.  The $36,104 shipping component (of the $123,000 new bleachers' cost) was paid on November 29, 2001.  Additionally, Defendant could arguably ask for prejudgment interest on the amount that it was awarded as an offset. Given the evidence and the ambiguity with respect to certain dates, the court finds that it would penalize Defendant to choose a date prior to November 29, 2001—a date by which all of the evidence supports a finding that all of the damages had accrued.  Therefore, this court orders prejudgment interest at the rate of 2.22%

on the amount of $116,400, to run from November 29, 2001, through the day prior to the entry of

judgment. This date best comports with the basic purpose of prejudgment interest: to put

Plaintiff in the position it would have been in had the bleachers been timely delivered and to

ensure that Plaintiff is fully compensated for its loss. See Reyes-Mata v. IBP, Inc., 299 F.3d 504,

508 (5th Cir. 2002); American Nat. Fire Ins.Co., 325 F.3d at 935.

Finally, the court finds that the prejudgment interest shall be computed daily and compounded

annually, in accordance with Section 1961, as the court utilized said statute when determining the

interest rate. See 28 U.S.C. § 1961(b); American Nat. Fire Ins. Co., 325 F.3d at 937 (though

observing that the decision whether to award compound or simple interest is left to the discretion

of the trial court, also noting that compound interest is the norm in federal litigation and holding

that compound interest should be awarded in Carmack Amendment cases, absent special

circumstances).

### 6. Award of PostJudgment Interest

Plaintiff requests postjudgment interest. The proper rate for the calculation of postjudgment

interest is the rate set forth in 28 U.S.C. § 1961(a), which provides that the interest rate "[s]hall be

calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year

constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Postjudgment interest is to be computed daily to the date of payment and compounded annually.

Id. at §1961(b). Postjudgment interest on the judgment amount in the present case is therefore

payable at a rate of 2.22%, beginning from the date of the entry of judgment until paid in full, and

it shall be computed daily and compounded annually. Id.

23

## IV.  CONCLUSION

For the foregoing reasons, the court denies Defendant's motion for a new trial and grants in part and denies in part its renewed motion for judgment as a matter of law.  The court denies in part and grants in part Plaintiff's motion for entry of judgment.  Plaintiff's total damage award is $116,400, calculated as follows:

| | |
|---|---|
| 1. Cost of rental bleachers | $9,000 |
| 2. Cost of new bleachers | $123,000 |
| | SUBTOTAL |
| | $132,000 |
| 3.  Offset by Defendant's award | $15,600 |
| | TOTAL DAMAGES |
| | $116,400 |

Plaintiff is entitled to prejudgment interest at the rate of 2.22%, the statutory rate set forth in 28 U.S.C. § 1961, starting from November 29, 2001, through the date prior to the entry of judgment. Such interest is to be computed daily and compounded annually, in accordance with that statute. Plaintiff is also entitled to postjudgment interest at the rate of 2.22%, the rate set forth in 28 U.S.C. § 1961, as of the date judgment is entered, to be computed daily and compounded annually until paid, in accordance with that statute.

Signed in Brownsville, Texas, this 25th[th] day of June, 2004.

Andrew S. Hanen
United States District Judge

24