United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 23, 2005**

Charles R. Fulbruge III
Clerk

REVISED JULY 8, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-41217

_____

United States District Court
Southern District of Texas
FILED

JUL 2 1 2005

Michael N. Milby
Clerk of Court

THE NATIONAL HISPANIC CIRCUS, INC.,
A New York not-for-profit Corporation,

                    Plaintiff – Counter Defendant – Appellee

versus

REX TRUCKING INC, ETC; ET AL

                                        Defendants

MASON & DIXON LINES, INC.

                    Defendant – Counter Claimant – Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before WIENER, DeMOSS, AND PRADO, Circuit Judges.

WIENER, Circuit Judge:

    Defendant – Counter Claimant – Appellant Mason & Dixon Lines,
Inc. ("Mason") challenges a jury verdict and damages awarded in
favor of Plaintiff-Counter Defendant-Appellee the National Hispanic
Circus (the "Circus").  We affirm.

    This dispute arises out of a missing set of circus bleachers,
lost somewhere between Texas and Chicago while in the care of
Mason.  The Circus regularly employed Mason's trucks and drivers to
transport its equipment from one show to the next.  On this

occasion, however, one of seven trailers — the one carrying half of the Circus's bleachers — never made it to the Chicago show. Consequently, the Circus was forced to rent replacement bleachers which provided approximately 600-700 fewer seats than its own bleachers.  Several weeks later, the Circus ordered replacement bleachers, which had to be custom-made in Italy to fit its tent. The cost of the replacement bleachers was $87,500.00, which the Circus was forced to pay in advance.   The shipping cost was $36,104.00.  (Approximately three months after its disappearance, the Circus's trailer containing its original bleachers was discovered in Arkansas.)

The Circus brought suit under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 et seq., against Mason and Rex Trucking[1] for damages it suffered as a result of the lost trailer.  Mason asserted a counterclaim for the balance of the Circus's freight charges for the trailers Mason did deliver timely to Chicago.

At the completion of the trial, the jury awarded the Circus damages of $9,000 for rental of replacement bleachers, $123,000 for the purchase and shipping of the new bleachers, and $16,500 for lost ticket sales.  It awarded Mason $15,600 on its counter-claim

---

[1] Mason acquired Rex approximately two weeks prior to the events at issue and agreed to answer for any damages the Circus could establish against Rex.  Rex was therefore dismissed from this suit.

for payment for timely delivery of the six other trailers. Mason then renewed an earlier motion for judgment as a matter of law and moved alternatively for a new trial. The district court struck the award for lost ticket sales as too speculative and offset the rest of the Circus's award by the amount of Mason's award, thus granting total damages to the Circus of $116,400, including pre- and post-judgment interest, but upheld all other aspects of the jury's verdict and its own rulings. Mason appeals the district court's denial of its motions for judgment as a matter of law and for a new trial, as well as one of the district court's evidentiary rulings and its calculation of damages.

1.  General v. Special Damages

We review de novo a district court's denial of a Federal Rule of Civil Procedure 50 motion for judgment as a matter of law.[2] Under this standard, judgment as a matter of law "is appropriate only where there is no legally sufficient basis for a reasonable jury to find for [a] party."[3] Although our review is de novo, we accord great deference to a jury verdict, evaluating the evidence in the light most favorable to the non-movant and reversing only if "the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary

---

[2] Arguello v. Conoco, Inc., 330 F.3d 355, 357 (5th Cir. 2003).

[3] Id.

conclusion."[4]

The Carmack Amendment allows a shipper to recover damages from a carrier for "actual loss or injury to the property" resulting from the transportation of cargo in interstate commerce.[5] A carrier's liability under the Carmack Amendment includes all reasonably foreseeable damages resulting from the breach of its contract of carriage, "including those resulting from nondelivery of the shipped goods as provided by the bill of lading."[6]

Both general and special damages may be recovered under the Carmack Amendment.[7] General damages are those that are foreseeable at the time of contracting.[8] Special damages are those that result from a party's breach of contract but are not reasonably foreseeable. Special damages generally are not recoverable in a breach of contract action absent actual notice to the defendant of special circumstances from which such damages might arise.[9]

---

[4] Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1323 (5th Cir. 1994).

[5] 49 U.S.C. § 14706(a)(1).

[6] Air Prods. & Chems., Inc. v. Ill. Cent. Gulf R.R. Co., 721 F.2d 483, 485 (5th Cir. 1983).

[7] Paper Magic Group, Inc. v. J.B. Hunt Transp., Inc., 318 F.3d 458, 461-62 (3d Cir. 2003).

[8] Hector Martinez & Co. v. S. Pac. Transp. Co., 606 F.2d 106, 109 (5th Cir. 1979).

[9] Tex. A&M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 404 (5th Cir. 2003).

Mason argues that the district court erred by submitting the foreseeability of the Circus's damages to the jury rather than deciding as a matter of law that the Circus's damages were special rather than general. But, "[t]he question whether or not the defendant did in fact foresee, or had reason to foresee, the injury that the plaintiff has suffered is a question of fact for the jury."[10]

The jury heard evidence that Mason (actually Rex) had previously shipped the Circus's equipment, that Mason employees filled out the bills of lading without listing the trailer's contents, and that Mason knew that it was shipping a "wide variety" of the Circus's equipment. This evidence was sufficient to support the jury's finding that Mason should have foreseen the injury to the Circus.[11]

2.    Jury Instructions; Denial of New Trial

As Mason objected to the district court's jury instructions at

---

[10]    11-56 <u>Corbin on Contracts</u> § 1012 (2005).  "The foreseeability of damages is a fact question we review for clear error," <u>Texas A&M</u>, 338 F.3d at 405, and "[t]he amount of damages that was reasonably foreseeable involves a fact question that [the plaintiff] is entitled to present to a jury." <u>Martinez</u>, 606 F.2d at 110.

[11] <u>See</u> <u>Air Prods.</u>, 721 F.2d at 487 (upholding district court's factual finding that plaintiff's damages were foreseeable because defendant's employees knew that plaintiff immediately unloaded deliveries of chemicals into a storage tank, that they should have reasonably anticipated that delivery of the wrong chemical would result in contamination of entire contents of the storage tank, and that it would cost money to clean up the mess).

trial, our review is for abuse of discretion.[12]  A district court does not abuse its discretion if its instructions, as a whole, state the law correctly and instruct the jury properly on the legal principles to be applied to the facts that they will decide.[13] Mason also appeals the district court's denial of its motion for a new trial based on what it terms inconsistent answers to the jury's interrogatories, a decision we review for abuse of discretion.[14]

Mason asserts that the district court improperly refused to craft an interrogatory that requested the jury to determine whether the damages being sought by the Circus were foreseeable <u>in the absence of actual notice</u>.  Instead, the district court separated the inquiry into two interrogatories, asking the jury, first, to determine whether the listed injuries were reasonably foreseeable to Mason at the time of contracting.  The jury was instructed that, if it answered in the negative, it should then determine whether Mason had <u>actual notice</u> of circumstances that could give rise to the Circus's injuries.  Posing this inquiry as two separate questions neither mis-stated the law nor made it impossible to tell whether the jury awarded general or special damages.

Mason goes on to argue that the jury's verdict was

---

[12] <u>United States v. Daniels</u>, 281 F.3d 168, 183 (5th Cir. 2002).

[13] <u>United States v. Dien Duc Huynh</u>, 246 F.3d 734, 738 (5th Cir. 2001).

[14] <u>Knight v. Texaco</u>, 786 F.2d 1296, 1299 (5th Cir. 1986).

inconsistent. Rather than awarding money damages after determining that the Circus's damages were reasonably foreseeable, the jury instead determined that Mason also had actual notice of the Circus's potential damages. Mason contends that this mistake requires a new trial, as the Circus presented no evidence showing that Mason had actual notice of the possibility of special damages; thus, it asserts, the jury's verdict may have rested on a theory that lacked adequate support in the record.[15]

Even if the jury's answers were inconsistent, — a highly implausible contention —[16] a new trial still was not required if the verdict can be explained by assuming that the jury misunderstood the question.[17] If the jury's answer to a question that was supposed to pretermit further inquiry is clear and disposes of the legal issues, we must ignore the jury's conflicting

---

[15] See Braun v. Flynt, 731 F.2d 1205, 1206 (5th Cir. 1984) ("When two claims have been submitted to the jury, whether on a general verdict or, as here, in a single interrogatory, a new trial may be required if one of the claims was submitted erroneously.") (quoting United N. Y. & N. J. Sandy Hook Pilot Ass'n v. Halecki, 358 U.S. 613 (1959)).

[16] A jury's answers "should be considered inconsistent. . . only if there is no way to reconcile them." Willard v. The John Hayward, 577 F.2d 1009, 1011 (5th Cir. 1978). In this case, it is conceivable that the jury found both that the damages at issue were reasonably foreseeable and that Mason had actual notice of the possibility of this kind of injury.

[17] Smith v. Tidewater Marine Towing, 927 F.2d 838, 843 (5th Cir. 1991) (citing Willard, 577 F.2d at 1011).

answers to any other questions, as they are irrelevant.[18]  As the
jury's answer to the second question was superfluous to its finding
that Mason could reasonably have foreseen the damages to the
Circus, Mason is not entitled to a new trial or a judgment as a
matter of law.[19]

3.  Exclusion of Witness's Testimony Under Rule 701

We review a district court's decision to exclude evidence for
abuse of discretion.[20]  If we find an abuse of discretion, we apply
the harmless error rule to determine whether the error affected the
substantial rights of the complaining party.[21]

Mason complains that a portion of the testimony of its
corporate claims manager, Ralph Castile, was improperly excluded.
Castile's job is, in large part, to sell at salvage cargo that has
been refused by the consignee or damaged in transit.  Castile was
permitted to describe the process by which he conducts those sales
and stated that he had been able to determine the market value of
the bleachers.  The district court nevertheless excluded Castile's

---

[18] White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987);
Carr v. Wal-Mart Stores, Inc., 312 F.3d 667, 674 (5th Cir. 2002).

[19] As we may ignore the jury's answer to the second
interrogatory, asking whether Mason had actual notice of the
Circus's damages, we do not consider Mason's argument that this
finding was not supported by the evidence.

[20] Green v. Adm'rs of the Tulane Educ. Fund, 284  F.3d 642,
660 (5th Cir. 2002)

[21] United States v. Asibor, 109 F.3d 1023, 1032 (5th Cir.
1997).

opinion testimony on the re-sale value of the bleachers.

Under Rule 701, "[a] lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the [fact finder].'"[22] "In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts."[23]  Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing.[24]

Castile was allowed to testify on matters relating to his own business experience, as permitted by Rule 701.  The district court properly excluded his testimony on matters, including the re-sale value of used, custom-made bleachers, about which he had no first-hand knowledge or experience.  The district court's ruling on Castile's testimony was an appropriate exercise of its discretion.

4.  Calculation of Damages

We review legal conclusions underlying an award of damages de

---

[22] Miss. Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002) (quoting United States v. Riddle, 103 F.3d 423, 428 (5th Cir. 1997)).

[23] Id. at 373-74 (allowing corporation's director of risk management to testify to lost profits, and collecting cases from other circuits holding likewise).

[24] Tex. A&M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 403 (5th Cir. 2003)(citation omitted).

novo.[25]  If the district court committed no legal error, we review its factual findings for clear error.[26]

Mason insists that the district court erred in awarding the Circus the cost of its new bleachers.  As it did not actually lose the bleachers but only misplaced them for several months, Mason argues, it should be liable only for damages resulting from the rental of temporary bleachers and any diminution in the bleachers' value during the time that Mason possessed them.

The Carmack Amendment incorporates common law principles for calculation of damages.[27]  "Ordinarily the measure of damages where the carrier fails to deliver a shipment at destination within a reasonable time is the difference between the market value of the goods at the time of delivery and the time when they should have been delivered."[28]  This method, however, is not the exclusive means by which damages may be measured in Carmack Amendment cases: It is not applied when another method will more accurately reflect the

_____

[25] Id. at 404 (citing Harken Exploration Co. v. Sphere Drake Ins. P.L.C., 261 F.3d 466, 477 (5th Cir. 2001)).

[26] Id. (citing Tyler v. Union Oil Co., 304 F.3d 379, 401 (5th Cir. 2002)).

[27] Hector Martinez & Co. v. S. Pac. Transp. Co., 606 F.2d 106, 108 (5th Cir. 1979).

[28] Richard A. Lord, 24 Williston on Contracts § 64:12 (4th ed. 2004).  See also Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990); Martinez, 606 F.2d at 110.

loss actually suffered by the plaintiff.[29]

Under particular circumstances, replacement cost can be a legitimate measure of Carmack Amendment damages.[30]  Here, the district court was required to determine the Circus's actual loss, using the most appropriate method.[31]  This case presents a circumstance in which awarding "market value" diminution or rental price of substitute equipment would not be appropriate, because the award would not fairly compensate the plaintiff for its actual loss.[32]

The Circus requires custom-made bleachers to fit its tent.

---

[29] Project Hope v. M/V Ibn Sina, et al., 250 F.3d 67, 77 (2d Cir. 2001)(admiralty case)(holding that district court did not abuse its discretion when it ordered the defendant to pay replacement cost of lost cargo, as that was the most accurate measure of the plaintiff's damages); Oak Hall, 899 F.2d at 296 (approving award of replacement cost of damaged academic robes, as the plaintiff secured substitute goods after the accident, lost no sales, and had no opportunity for sales with the damaged goods); Martinez, 606 F.2d at 110-11.

[30] See Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., 325 F.3d 924, 935 (7th Cir. 2003)("The other measure commonly used is the replacement cost of the damaged goods to the shipper -- particularly when the shipper has not lost a sale, but was able to timely purchase replacements."); Project Hope, 250 F.3d at 77; Oak Hall, 899 F.2d at 296.

[31] See Martinez, 606 F.2d at 110.

[32] See Air Prods. & Chems., Inc. v. Ill. Cent. Gulf R.R. Co., 721 F.2d 483, 485 (5th Cir. 1983)(holding defendant carrier liable for the cost of cleaning plaintiff's chemical storage tank after carrier had mistakenly delivered the wrong chemical, plaintiff had emptied the chemical into the tank, and massive clean-up was required).

Although its bleachers were eventually found,[33] the Circus had already fully paid for its new bleachers by that time, and the jury implicitly rejected Mason's argument that the Circus should have mitigated its damages by selling the old bleachers once they were recovered.  The Circus had no reason to believe that the bleachers would be found or returned and, under these circumstances, made a reasonable decision to purchase new ones. The Circus was properly compensated for its actual loss, the cost of the new bleachers.

For these reasons, the district court's judgment is, in all respects,

AFFIRMED.

---

[33] Mason did not even deliver the bleachers to the Circus, however; it merely notified the Circus of the found trailer, requiring the Circus to send a tow truck to fetch its bleachers from Arkansas.